DAVIS ELLIOTT INTERNATIONAL, INC., Appellant,

v.

PAN AMERICAN CONTAINER CORP.

No. 82–1531.

United States Court of Appeals, Third Circuit.

Argued March 11, 1983.

Decided May 2, 1983.

---

Daniel B. Pierson, V (argued), Pierson, Cameron & Morris, P.C., Philadelphia, Pa., for appellant.

James W. Johnson (argued), William H. Black, Jr., Hecker, Maginnis, Rainer & Brown, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff appeals from the district court's *sua sponte* entry of summary judgment for the defendant, entered before responses to discovery requests were filed, without notice to the parties that disposition on the merits was being considered, and without a hearing. Because the district court's action departed from the orderly procedures required and contemplated by the Federal Rules of Civil Procedure, we reverse.

Plaintiff Davis Elliott International, Inc. (Davis), an exporter of goods to foreign countries, sued Pan American Corp. (Pan American), alleging that it had contracted with Pan American, a freight forwarder and carrier, to ship hardware to plaintiff's customer in Nigeria; that Pan American represented that the goods would be containerized; that Pan American failed to containerize the goods; and that as a result merchandise was lost and plaintiff sustained damages of $18,000. The complaint alleged common law breach of contract or, alternatively, a violation of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–15 (1976 & Supp. V 1981). Federal jurisdiction was predicated on diversity of citizenship. Defendant denied the substantive allegations of the complaint, and interposed 26 affirmative defenses including the one year statute of limitations set forth in COGSA, 46 U.S.C. § 1303 (1976).

A month after the answer was filed, the district court filed a Pre-trial Report and Order, which set forth the status of settlement negotiations and directed the parties to submit Pre-trial Memos and Proposed Findings of Fact and Conclusions of Law. Plaintiff's Pre-trial Memo was due approximately two weeks from the date of the Order and defendant's was due one week thereafter. Shortly after those documents were filed, plaintiff filed a Brief in Support

of Liability and defendant filed a Memorandum in Support of the Applicability of the Carriage of Goods by Sea Act. Plaintiff represents that these briefs, which the parties agreed to file, were requested by the court in aid of settlement discussions. Brief for Appellant at 9. It is undisputed that there were two pre-trial conferences in addition to telephone communications with the district court relating to possible settlement. The parties also filed discovery requests. Defendant sought documents and plaintiff filed a Motion for Letters Rogatory. There were no substantive responses to these discovery requests. No motion for summary judgment was filed, nor were the parties advised that the district court was considering summary judgment. Nonetheless, shortly after the filing of the briefs, the district court entered a judgment in favor of the defendant and against the plaintiff, and in the accompanying memorandum opinion held that plaintiff's claims are covered by COGSA and are also time barred by its application. *Davis Elliott International, Inc. v. Pan American Container Corp.,* 546 F.Supp. 1068 (E.D.Pa.1982).

■ Neither the order nor the opinion of the district court states under which provision of the Federal Rules of Civil Procedure judgment was entered. It is apparent that judgment could not have been a dismissal for failure to state a claim or a judgment on the pleadings since the court considered matters, such as the bill of lading, which were outside the pleadings. We therefore construe the order as one granting summary judgment. In its opinion, the district court stated that "[t]he parties agree that they have concluded their presentation of the case by the pleadings, memoranda filed by them and that there is no further evidence to be presented to the court and the matter is ripe for adjudication." *Id.* at 1069. Appellant disputes this statement and we find nothing on the record to support it. Indeed in reading plaintiff's brief filed in the district court in support of its theory of liability, it is apparent that plaintiff believed the case was not ready for adjudication since that brief referred to "what Plaintiff intends to prove at trial",

App. at 41a; and stated that the plaintiff intended to file a motion asking defendant to produce a "legible reproduced facsimile" of the bill of lading, App. at 53a.

The procedure followed by the district court in this case is almost identical to that which it followed and which was disapproved in *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556 (3d Cir.1980), where we reversed its entry of pretrial judgment. In *Bryson* also, the district court had stated that the parties had agreed to submit the case on the pleadings, a statement this court rejected after a review of the record. *Id.* at 558–59.

In *Bryson,* in language equally applicable here, we commented on the necessity of giving notice to the parties under Fed.R. Civ.P. 56. Judge Hunter, speaking for the court, stated:

> A summary judgment procedure under Fed.R.Civ.P. 56 has its own protections against unwarranted pretrial dismissal of an action. Rule 12(b) requires that "all parties ... be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Preterm, Inc. v. Dukakis,* 591 F.2d 121, 134 (1st Cir.); *cert. denied sub nom. Baird v. Pratt,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979); *Sims v. Mercy Hospital of Monroe,* 451 F.2d 171, 173 (6th Cir.1971). To exercise the right to oppose summary judgment, a party must have notice. Here, however, no notice was given. Although the court may dismiss the action at its own instance, it must first provide Bryson an opportunity to oppose an entry of summary judgment against him.

*Id.* at 559.

■ Here, as in *Bryson,* plaintiff "had no prior knowledge that the court was considering judgment on the pleadings or summary judgment." *Id.* Here, as in *Bryson,* "[w]ithout notice, [plaintiff] had no reasonable opportunity to present to the court material relevant to a Rule 56 proceeding." *Id.* Here, as in *Bryson,* "[b]ecause the procedure of Rule 56 requiring an opportunity

to present pertinent material, which presumes notice to the party so that he may take advantage of the opportunity, was not followed, the entry of judgment must be reversed." *Id.; see also Crown Central Petroleum Corp. v. Waldman,* 634 F.2d 127 (3d Cir.1980).

Defendant relies on *United States v. Fisher-Otis Co.,* 496 F.2d 1146 (10th Cir. 1974), to support its contention that notice and hearing were not required in this case. That case is inapposite because the parties there had agreed to submit the particular legal issue to the court for resolution on the basis of stipulated facts. *Id.* at 1151–52. In this case, the parties did not submit any legal issues for resolution but only in aid of settlement.

It remains for consideration only whether there is any state of facts on which plaintiff could conceivably recover. Plaintiff concedes that if COGSA were applicable to this transaction the statute of limitations would bar its claim since it did not file suit until approximately 16 months after the arrival of the goods in Nigeria. We thus examine plaintiff's factual contentions (which it has not had an opportunity to present in verified form) to ascertain whether they might provide a basis for recovery.

COGSA was enacted in 1936 as part of an international effort to achieve uniformity and simplification of bills of lading used in international trade. *See Union Ins. Soc'y. v. S.S. Elikon,* 642 F.2d 721, 723 (4th Cir. 1981). Its provisions govern the responsibility and liability of carriers, shippers and their underwriters. All bills of lading or other similar documents of title which are "evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade" are subject to the provisions of COGSA. 46 U.S.C. § 1300 (1976). The term "carriage of goods" refers to the period from loading the goods onto the ship until they are discharged from the ship. 46 U.S.C. § 1301(e) (1976). The statute does not, by its own terms, apply to the pre- and post-loading stages. *See* 46 U.S.C. § 1311 (1976). The carrier and shipper may agree "as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea." 46 U.S.C. § 1307 (1976).

■ In its district court brief, plaintiff proposed to prove that it had advised Pan American of its customer's specific request for containerization and the reasons for this request, that it had entered into an agreement with Pan American under which Pan American agreed to perform containerized shipping services for the goods, that plaintiff relied on the defendant's promise to containerize, that therefore plaintiff arranged for the drop shipment of goods to defendant's warehouse in two-ply cardboard boxes instead of export crates or export packaging, and that Pan American's failure to containerize the goods before they were loaded resulted in the injury for which it claims recovery. Plaintiff contends that Pan American's undertaking to containerize constituted a valid contract covering preloading activities to which COGSA is inapplicable.

The district court rejected plaintiff's argument because one of the provisions of the bill of lading covering the goods "provided for . . . incorporation [of COGSA] throughout the period that the goods were in custody of defendant," which included the pre-loading period. 546 F.Supp. at 1070.

Plaintiff argues that the bill of lading referred to was issued unilaterally and after the goods were already on board, and that therefore the language in the bill of lading incorporating COGSA throughout the entire period, which was relied on by the district court, constituted an attempt by defendant to change the pre-existing contrary bilateral agreement between the parties. Plaintiff explains its failure to object to this provision, when it finally received the bill of lading, on the ground that this provision was illegible, and the district court apparently agreed. *Davis Elliott International, Inc. v. Pan American Container Corp.,* 546 F.Supp. at 1070.

By its terms, COGSA applies to the pre-loading stage only if the parties so agree. If plaintiff proves its version of the facts, the parties never agreed to apply COGSA to the pre-loading stage. Therefore, we are not persuaded that the case relied on by the district court, *Miller Export Corp. v. Hellenic Lines, Ltd.,* 534 F.Supp. 707 (S.D.N.Y. 1982), even if applicable, should govern this situation.

We cannot conclude at this preliminary stage that plaintiff's legal theory has no possibility of success. It must be examined in light of the factual development.[1]

For the foregoing reasons, we will reverse the judgment for defendant and remand for further proceedings.

---

1. Because of our disposition we do not address plaintiff's additional argument that Pan American's failure to containerize the goods constituted an unreasonable "deviation" would de-prive a carrier of the benefit of its contractual limitations of liability. *See generally* Friedell, The Deviating Ship, 32 Hastings L.J. 1535 (1981).