761 F.2d 148
 37 Fair Empl.Prac.Cas. 1253,
27 Wage & Hour Cas. (BN 238,
36 Empl. Prac. Dec. P 35,175,
37 Empl. Prac. Dec. P 35,417,
102 Lab.Cas. P 34,674
 Eleanor A. BROBST, Patricia M. Heiney, Marie M. Fritz,
Sharon M. Middlecamp, Luella M. Hamm, Verna Millward, Robert
Lee Little, Robert N. Buckwalter, Marion E. Stettler,
Claudia Wotta, Verna S. Undercuffeler, Alice S. Miessner,
Dennis G. Cook, Jean R. Berger and Elizabeth S. LeVan, Jean
R. Berger, Executrix of the Estate of Marie M. Fritz,
Madeline Dorney, Carmella Hawk, Donald Lakovits, Elaine
Seislove, Carol Snyder, Bernard Polit, Scott Rehrig, and Victor Bortz
v.
COLUMBUS SERVICES INTERNATIONAL, a corporation, and Walter
R. Morgan, Individually and as Officer of Defendant.
Appeal of Eleanor A. BROBST, Sharon M. Middlecamp, Robert N.
Buckwalter, Marian E. Stettler, Claudia Wotta, Verna S.
Undercuffeler, Alice S. Meissner, Dennis G. Cook, Jean R.
Berger, Jean R. Berger, Executrix of the Estate of Marie M.
Fritz, Madeline Dorney, Carmella Hawk, Donald Lakovits,
Elaine Seislove, Carol Snyder, Bernard Polit and Scott Rehrig.
 No. 84-3263.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 1, 1984.
Decided May 2, 1985.
 
 Thomas J. Calnan, Jr. (Argued), Calnan & Orloski, P.C., Allentown, Pa., for appellants.
 Paul M. Puskar (Argued), Baskin and Steingut, P.C., Pittsburgh, Pa., for appellee.
 Before GARTH and SLOVITER, Circuit Judges, and BARRY, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 Congress enacted The Equal Pay Act in 1963 "to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry--the fact that the wage structure of many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.' " Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting S.Rep. No. 176, 88th Cong., 1st Sess. 1 (1963)). The Act prohibits employers from discriminating on the basis of sex by paying unequal wages "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," unless justified by one of the four statutory exceptions.[1] The Act also prohibits an employer from reducing the wage rate of any employee in order to comply with the Act.
 
 
 2
 Much litigation under the Act has involved custodial services, apparently because men in such jobs have frequently been classified differently than women and have been paid higher wages. See, e.g., EEOC v. Central Kansas Medical Center, 705 F.2d 1270 (10th Cir.1983); Brennan v. South Davis Community Hospital, 538 F.2d 859 (10th Cir.1976); Usery v. Board of Education, 462 F.Supp. 535 (D.Md.1978); Brennan v. Board of Education, 374 F.Supp. 817 (D.N.J.1974). The courts have been required to look beyond the job title to determine whether the jobs are substantially equal. See Central Kansas Medical Center, 705 F.2d at 1273; Shultz v. Wheaton Glass Co., 421 F.2d 259, 265-66 (3d Cir.), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).
 
 
 3
 Plaintiffs, who are present or former custodial workers at Cedar Crest College in Allentown, Pennsylvania, allege, apparently without contradiction, that prior to July 3, 1977, the maintenance workers at the college were classified as either "laborers" or "custodians". The laborers, who were all male, earned forty cents per hour more than the custodians, who were, all but one, female. A custodian performing the work of a laborer received a premium, and thus was paid at the laborers' rate for that work. On July 3, 1977, the defendant, Columbus Services International (CSI), took over the maintenance work at Cedar Crest. According to the facts as set forth by the district court, CSI immediately reclassified all the maintenance workers as "custodians" and paid them the lower rate even when they performed the work that was, up until that time, performed by laborers. Brobst v. Columbus Services International, 582 F.Supp. 830, 832 (W.D.Pa.1984).
 
 
 4
 Four employees filed a grievance, which resulted in an arbitrator's determination that CSI was obliged to pay the forty cents per hour premium for the time custodians spent doing laborers' work. CSI refused to comply, contending it was barred from paying such a premium under a consent decree issued in January 1977 settling other litigation, which permanently enjoined it from violating the Equal Pay Act by paying different wages to employees performing substantially equal work. CSI sought approval of its position that the arbitration award conflicted with the consent decree from the Department of Labor, which, at that time, had the responsibility for enforcing the Act. Instead, the Department of Labor responded that in order to comply with the Equal Pay Act CSI would have to raise the wage rates of all the custodians to the laborer rate.[2]
 
 
 5
 Plaintiffs then filed suit alleging that CSI was in violation of the Equal Pay Act and of the consent decree.[3] As described by the district court, plaintiffs' claim under the Equal Pay Act had two components:
 
 
 6
 (1) CSI's elimination of the higher-paying, all-male laborer classification amounted to a reduction in the male wage rate to the lower, predominantly female, custodial wage rate; (2) CSI's failure to pay the premium wage rate to custodians performing laborer's work, coupled with the fact that during the CSI period both male and female custodians have performed laborer's work, amounts to a reduction of the wage rate paid to the one male custodian who performed laborer's work, at the laborer's premium, during the Cedar Crest period.
 
 
 7
 Brobst v. Columbus Services International, 582 F.Supp. at 832.
 
 
 8
 In ruling on motions filed by CSI, the court (1) ruled that there was no merit in plaintiffs' claim that CSI violated its earlier consent decree with the Secretary of Labor, id. at 831 n. 1; (2) granted CSI's motion in limine (on different grounds than asserted by CSI) finding "as a matter of law, that the custodian job and the laborer job did not constitute 'equal work' for purposes of the Equal Pay Act," id. at 833; and (3) granted CSI's motion for summary judgment on plaintiffs' claim regarding the premium, holding (on grounds other than those on which CSI's motion was premised) that "plaintiffs have not, and cannot, make a prima facie showing that CSI equalized male and female wage rates at a lower 'female' rate", id. at 834. We conclude that the district court's ruling on all three issues must be reversed, and the case remanded.
 
 II.
 
 9
 In 1977, an Equal Pay Act action brought by the Secretary of Labor against CSI involving its employees at the Greater Pittsburgh International Airport was settled by consent decree. Usery v. Columbus Services International, No. 76-849 (W.D.Pa. Jan. 11, 1977). That decree enjoins CSI from violating the Act by discriminating:
 
 
 10
 within any establishment between employees on the basis of sex by paying wages to employees in such establishment at rates less than the rates paid to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.
 
 
 11
 (emphasis added). The decree further provides that, "The defendants shall not, contrary to Section 6(d)(1) of the Act, reduce the wage rate of any employee in order to comply with the provisions of Section 6(d)(1) of the Act."
 
 
 12
 In ruling out plaintiffs' claim that CSI violated that decree, the district court in this case stated that "[d]espite the terms of the order in Usery, that case involved CSI employees at Greater Pittsburgh International Airport, and did not concern CSI's operation at Cedar Crest College." 582 F.Supp. at 831 n. 1. The court should not have so summarily dismissed plaintiffs' claim, since the decree, by its terms, applies to "any establishment". If it was intended to have limited effect, it could easily have said so. Moreover, CSI has continually taken the position that the decree applies to its operation at Cedar Crest, using precisely that argument as the basis for its ongoing refusal to comply with the arbitral award and for its application to the Secretary of Labor. Although the effect of the decree may be no more than to require CSI not to violate the Equal Pay Act, plaintiffs are entitled to this extra string to their bow.
 
 III.
 
 13
 It appears from the complaint that the gravamen of plaintiffs' claim lies in CSI's actions when it took over maintenance responsibilities at Cedar Crest. Paragraph 26 of the complaint states:
 
 
 14
 In violation of the Order of January 11, 1977 and in violation of 29 U.S.C. Sec. 206(d)(1), Defendants illegally reduced the wages of the male employees from the higher "laborer" rate to the lower "custodial" rates, and illegally refused to equalize the wage rates of the female employees by maintaining them at the lower "custodial" rate.
 
 
 15
 Counsel advised us at oral argument that there are still some workers, now called maintenance workers, who perform outdoor maintenance functions and who continue to receive $.40 an hour more than the custodians. The district court did not treat this case as raising any claim arising out of any present differential in wage rate between the outside maintenance workers and the indoor custodians, nor will we.
 
 
 16
 Thus, the issue is focused solely on whether CSI "reduce[d] the wage rate of any employee" in violation of the Act after it took over the duties at Cedar Crest. In order to make a viable claim under the Act arising out of the reduction of wages, plaintiffs must show that either of the two wage differentials previously maintained violated the statute. One differential was the forty cents an hour paid to the all male laborer group over that paid to the all but one female custodians. If, as plaintiffs claim, CSI consolidated much of the work previously done by laborers with the work done by custodians at the lower custodian rate, that reduction would violate the Act provided the work previously performed by the laborers and the custodians required "equal skill, effort, and responsibility," and was "performed under similar working conditions." The second differential relates to the forty cents an hour premium which, according to plaintiffs, was paid only to the one male custodian when he did laborers' work. This premium was also eliminated at the time CSI took over.
 
 
 17
 Following a pretrial conference devoted primarily to settlement but at which there was some discussion of the nature of the claims and the amount of time needed for trial, CSI filed a motion in limine. It sought to preclude plaintiffs from presenting evidence directed to the issue of whether the jobs of custodian and laborer were substantially equal before it assumed maintenance responsibilities at Cedar Crest. CSI argued that the suit was limited to the claim that it had "unlawfully reduced the wages of a male custodian and unlawfully refused to increase the wages of the female custodians to the wages of the male custodian[ ]." It claimed it would be prejudiced if plaintiffs were permitted to introduce evidence of the custodians' full range of job duties as compared to the full range of the laborers' duties "when this was not the claim made in the Complaint, nor in Plaintiffs' Pretrial Statement." The motion sought to eliminate from the case plaintiffs' claim that CSI effectively lowered the "male" rate paid to the laborers to the "female" rate paid to the custodians by consolidating the laborer and custodial classifications.
 
 
 18
 In ruling on the motion in limine, the district court did not address CSI's claim that the issue of the equality between the custodian and laborer jobs was new to the case. Nonetheless, it implicitly rejected CSI's contention, since in the opinion it described the two claims: one based on the differential paid to laborers over custodians, the other based on the premium paid to custodians for doing laborers' work. However, the court granted the motion in limine on grounds completely different from those asserted by CSI. The court held that:The record, including plaintiffs' answers to interrogatories regarding the content of the two jobs, shows that the custodian performed significantly different activities than did the laborer, and vice versa. While the Act does not require that two jobs be identical for its "equal pay" mandate to apply, substantial equality of job content is required. Usery v. Allegheny County Institution District, 544 F.2d 148, 153 n. 4 (3d Cir.1976) cert. denied, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977). The court finds, as a matter of law, that the custodian job and the laborer job did not constitute "equal work" for purposes of the Equal Pay Act. See Angelo v. Bacharach Instrument Co., 555 F.2d 1164 (3d Cir.1977). This determination having been made on the basis of substantial record evidence, plaintiffs may not contend otherwise. CSI's motion in limine is granted.
 
 
 19
 Brobst v. Columbus Services International, 582 F.Supp. at 832-33.
 
 
 20
 Because the procedure followed by the district court in ruling on the merits was defective, we cannot affirm. By ruling that the custodian and laborer jobs were not equal as a matter of law when the motion in limine was based on other grounds, the district court effectively precluded plaintiffs from marshalling the record evidence that it had already accumulated on this issue and pretermitted their filing affidavits of persons who might have been able to present competent evidence to show that there was at least a genuine issue of material fact on this issue. In effect, the district court's procedure converted the in limine motion into one for summary judgment, but without the procedural protections of notice which the federal rules require before judgment on the merits may be granted.
 
 
 21
 Rule 56(c) specifically provides that a motion for summary judgment shall be served at least 10 days before the time fixed for the hearing. As we stated in Season-All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari, 425 F.2d 34, 39 (3d Cir.1970), "[t]he rule does not contemplate that a motion for summary judgment shall be disposed of on briefs, at least until the moving and adverse parties have had an opportunity to file their respective supporting and answering affidavits, and to supplement them if need be." A sua sponte grant of summary judgment should be avoided. See Davis Elliott International, Inc. v. Pan American Container Corp., 705 F.2d 705, 707-08 (3d Cir.1983). See generally 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 56.12 (2d ed. 1983).
 
 
 22
 The situation most analogous to the present one arises when a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or 12(c) is transformed into a summary judgment. Rule 12 provides that when the court consults material other than pleadings, the motion is governed by Rule 56:
 
 
 23
 If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
 
 
 24
 This language was added in 1946 to insure "that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise...." Fed.R.Civ.P. 12 advisory committee notes. The opposing party is thereby afforded not only notice but an opportunity to respond. See Crown Central Petroleum Corp. v. Waldman, 634 F.2d 127, 129 (3d Cir.1980); Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir.1980). See also Garaux v. Pulley, 739 F.2d 437, 440 (9th Cir.1984). We reiterate that however the motion is denominated, a court may not dispose of the case on the merits without giving the opposing party a reasonable opportunity to present to the court material relevant to the dispositive issue.
 
 
 25
 CSI recognizes the procedural difficulties presented by the district court's grant of its motion in limine on grounds other than those asserted. However, it contends that this court should affirm the grant of the motion in limine on the grounds it originally urged in the district court, i.e., that the claim based on the higher wages paid to the laborers was neither pleaded nor asserted in plaintiffs' answers to its interrogatories. We believe the record is not sufficiently clear for us to take the course of action requested by CSI.
 
 
 26
 In the first place, as we noted previously, paragraph 26 of plaintiffs' complaint does refer to the difference in wages between the laborer class and the custodial class, since it states that "Defendants illegally reduced the wages of the male employees from the higher 'laborer' rate to the lower 'custodial' rates." In paragraph 29, plaintiffs claim that CSI should "pay the laborer rate not only to the four employees involved in the previous arbitration ..., but also to all custodial maintenance employees at Cedar Crest College." Also, in paragraph 30, plaintiffs claim that in violation of the order of January 11, 1977 and in violation of the Equal Pay Act, "Defendants continued and continue to perpetrate sex discrimination against the Plaintiffs by refusing to equalize the rates of female employees with the higher 'laborer' rate, and by illegally reducing the 'laborer' rate to the 'custodial' rate." Paragraph 31 claims that plaintiffs are entitled to the higher "laborer" rate from July 3, 1977 to the present. Thus, we see nothing in the complaint limiting plaintiffs' claim to that of the premium paid to some, but not all, custodians.
 
 
 27
 Also, although there is some ambiguity in the plaintiffs' pretrial statement, it does request damages of forty cents per hour "for all hours worked". If only the premium claim were to be litigated, plaintiffs would be entitled to forty cents per hour only for hours doing laborers' work. Given the state of the record and the district court's unwillingness to grant the motion in limine on the basis asserted, notwithstanding its much more immediate contact with the case, we as an appellate court do not feel free to do so.
 
 
 28
 If it were clear that there was no state of facts under which plaintiffs could recover, we might be able to affirm the district court's judgment. See Davis Elliott International, Inc. v. Pan American Container Corp., 705 F.2d at 708. However, we cannot hold that plaintiffs have failed to state an Equal Pay Act claim or that, under their version of the facts, they could not recover. To recover under this claim, plaintiffs will have to sustain their burden of proving that the custodians' work and laborers' work entailed substantially equal skill, effort, and responsibility and was performed under similar working conditions. Corning Glass Works v. Brennan, 417 U.S. at 195, 94 S.Ct. at 2228; Spaulding v. University of Washington, 740 F.2d 686, 696 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984); Angelo v. Bacharach Instrument Co., 555 F.2d 1164, 1171 (3d Cir.1977). Plaintiffs must establish their case by proving actual job content; by the same token the employer may not rely merely on the job description. EEOC v. Universal Underwriters Insurance Co., 653 F.2d 1243, 1245 (8th Cir.1981); Pearce v. Wichita County Hospital Board, 590 F.2d 128, 133 (5th Cir.1979); Hodgson v. Brookhaven General Hospital, 436 F.2d 719, 724 (5th Cir.1970). As our opinions show, the relevant issue is not the name under which the position was classified but what was actually done. See Usery v. Allegheny County Institution District, 544 F.2d 148 (3d Cir.1976), cert. denied, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); Shultz v. Wheaton Glass Co., 421 F.2d 259 (3d Cir.), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).
 
 
 29
 In Wheaton Glass, we explained that Congress did not intend to limit the applicability of the Equal Pay Act to cases involving identical work, 421 F.2d at 265. In Allegheny County, we quoted the applicable regulation stating, "Congress did not intend that inconsequential differences in job content would be a valid excuse for payments of a lower wage to an employee of one sex than to an employee of the opposite sex if the two are performing equal work on essentially the same jobs in the same establishment." Allegheny County, 544 F.2d at 152 (quoting 29 C.F.R. Sec. 800.120 (1974)) (emphasis added). Applying that regulation, we held that although the beauticians, unlike the barbers, used several tools in addition to the basic scissors, clippers and combs "which use requires more effort of performance", this did not support a finding of unequal work. Id. at 152.
 
 
 30
 All the courts have agreed that the test is whether the work is "substantially equal". When the Supreme Court reversed this court's determination that work on a night shift was not equal to the same work performed on a day shift, it took a pragmatic approach to the issue of equality, holding that inspection work whether performed during the day or night is "equal work" within the meaning of the Act. Corning Glass Works v. Brennan, 417 U.S. at 202-03, 94 S.Ct. at 2231-32.
 
 
 31
 The crucial finding on the equal work issue is whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical. The inquiry then turns to whether the differing or additional tasks make the work substantially different. See, e.g., Brennan v. South Davis Community Hospital, 538 F.2d 859, 861-62 (10th Cir.1976); Brennan v. Prince William Hospital Corp., 503 F.2d 282, 285-86 (4th Cir.1974), cert. denied, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975). As noted previously, cases involving maintenance workers have presented particularly difficult questions of equal work under the Act, and the results have not been uniform. Thus, while many courts have found that the work performed by the higher paid males was equal to that performed by the lower paid females, see, e.g., Central Kansas, 705 F.2d at 1273; South Davis, 538 F.2d at 863-64; Brennan v. Goose Creek Consolidated Independent School District, 519 F.2d 53, 58 (5th Cir.1975); EEOC v. Rhode Island, 549 F.Supp. 60, 66 (D.R.I.1982), aff'd, 720 F.2d 658 (1st Cir.1983); Usery v. Board of Education, 462 F.Supp. at 568; Brennan v. Board of Education, 374 F.Supp. at 829-30; Brennan v. Houston Endowment, Inc., 7 Empl.Prac.Dec. (CCH) p 9204 (S.D.Tex.1974), aff'd, 511 F.2d 1190 (5th Cir.1975); Hodgson v. San Diego Unified School District, 6 Empl.Prac.Dec. (CCH) p 8684 (S.D.Cal.1972); Hodgson v. Grove City College Corp., 3 Empl.Prac.Dec. (CCH) p 8328 (W.D.Pa.1971); Hodgson v. Waynesburg College, 3 Empl.Prac.Dec. (CCH) p 8343 (W.D.Pa.1971), others have found the work unequal, see, e.g., EEOC v. Mercy Hospital and Medical Center, 709 F.2d 1195, 1199 (7th Cir.1983); EEOC v. Kenosha Unified School District, 620 F.2d 1220, 1225-26 (7th Cir.1980); Marshall v. Dallas Independent School District, 605 F.2d 191, 194 (5th Cir.1979); Marshall v. School Board, Hermitage School District, 599 F.2d 1220, 1222 (3d Cir.1979); Usery v. Columbia University, 568 F.2d 953, 961 (2d Cir.1977); Marshall v. Marist College, 14 Empl.Prac.Dec. (CCH) p 7735 (S.D.N.Y.1977). Many courts have stated that "whether two job classifications entail 'equal work' under the Act necessarily must be decided on a case-by-case basis." Usery v. Columbia University, 568 F.2d at 958. See also EEOC v. Mercy Hospital and Medical Center, 709 F.2d at 1197; Gunther v. County of Washington, 623 F.2d 1303, 1309 (9th Cir.1979), aff'd 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); Odomes v. Nucare, Inc., 653 F.2d 246, 250 (6th Cir.1981); Prince William Hospital Corp., 503 F.2d at 286. Given the fact intensive nature of the inquiry, summary judgment will often be inappropriate.
 
 
 32
 In this case, plaintiffs claim that there is a significant core of common work, and argue, without citation to the record, that both groups operated power equipment, dumped trash, mopped floors and cleaned windows. They argue that although laborers also cut grass, trimmed hedges and dug ditches, such work did not demand a more significant degree of effort than did the work done by the female custodians. We express no opinion on the persuasiveness vel non of plaintiffs' argument.
 
 
 33
 Accordingly, we will reverse the grant of the motion in limine and remand this matter to the district court because it failed to follow a procedure that provided plaintiffs with notice and an opportunity to respond. On remand, CSI will be free to file a motion for summary judgment if it believes that the record and any affidavits it may file can support the conclusion reached by the district court that the laborers' work and the custodians' work was not of equal skill, effort and responsibility. Plaintiffs, of course, must be given the opportunity, as we said above, to marshal their opposing evidence. We merely observe that if a decision on the merits of this issue is made before trial, whatever it may be, it would best serve this court's review function if the factual basis relied upon is fully set forth.
 
 IV.
 
 34
 Almost contemporaneously with its motion in limine, CSI filed a motion for summary judgment addressed to plaintiffs' other Equal Pay Act claim, the one premised on the elimination of the hourly premium paid to custodians for performance of laborers' work. Obviously, if plaintiffs succeed in their claim that all custodians were entitled to be paid at the laborers' rate, the premium claim would no longer be pertinent. Nonetheless, it must still be addressed at this stage of the proceeding.
 
 
 35
 As plaintiffs articulated the premium claim in the district court, it was that the one male custodian performed laborers' work regularly and received the laborers' premium of forty cents an hour. To establish a prima facie case on their claim that the elimination of the premium violated the Act, plaintiffs would have to show that the totality of the work done by the male custodian, including that for which he received a premium, was equal in skill, effort and responsibility to the work done by the female custodians.
 
 
 36
 CSI sought summary judgment on the premium claim on the ground that the female custodians, as well as the one male custodian, were paid the premium when they did laborers' tasks. It supported its motion with the affidavit of Cedar Crest's Payroll Officer and the Cedar Crest payroll records which showed that several women received the premium more often than the one male custodian. CSI argued that the record showed there was no higher "male" custodian rate to reduce and hence no violation of the Act.
 
 
 37
 In ruling on the motion for summary judgment, the district court seems to have assumed the accuracy of plaintiffs' allegation that only the male custodian was given an opportunity to receive the premium. The court addressed CSI's contention only in a footnote, stating:
 
 
 38
 CSI maintains that both male and female custodians performed laborer's work and received the laborer's premium during the Cedar Crest period. While this disagreement between the parties creates a factual issue, it is not a material one so as to preclude summary judgment disposition because under either version of the facts, no violation of the Act can be proved.... Under CSI's version, the Act was not violated because CSI's failure to pay the premium rate to custodians doing laborer's work affected custodians of both sexes.
 
 
 39
 Brobst, 582 F.Supp. at 833 n. 3 (emphasis added).
 
 
 40
 Rather than accept CSI's proffered basis for summary judgment, the district court granted the motion on different grounds. It stated that "accepting plaintiffs' version of the facts", it nonetheless "concludes that CSI has not discriminated against female employees at Cedar Crest College by paying female employees a lower wage rate than male employees for equal work, or by equalizing male and female wage rates by reducing the wage rate paid to males." Id. at 833. Once again, the court made a factual finding, i.e., that "[t]he work for which Cedar Crest paid the premium to the male custodian was different from the work done by the female custodians." Id. It then held that while failure to provide the female custodians with the opportunity to earn the premium might be actionable under Title VII, such action would not violate the Equal Pay Act. Id. Consequently it granted CSI's motion for summary judgment with respect to plaintiffs' premium claim.
 
 
 41
 We must remand this claim to the district court for the same reason we remanded the claim as to the substantial equality between laborers' work and custodians' work. The issue raised by the summary judgment motion was whether, if there were no factual issue on CSI's contention that female custodians also received the laborers' premiums when they did work designated as laborers' work, CSI was then entitled to judgment as a matter of law. Plaintiffs had no notice that the district court would address the more subtle issue, whether performance of the additional tasks designated as laborers' work rendered the work performed by the male custodian substantially unequal to that performed by the remainder of the custodial staff. Thus, plaintiffs had no opportunity either to present evidence on this issue or to argue their legal position.
 
 
 42
 There is no facile resolution to that issue. As Judge Butzner, writing for the Fourth Circuit, recognized, "One of the most common grounds for justifying different wages is the assertion that male employees perform extra tasks." Brennan v. Prince William Hospital Corp., 503 F.2d 282, 285 (4th Cir.1974). In order to prevent the semblance of valid job classification from "mask[ing] the existence of wage discrimination based on sex," he outlined the following circumstances as showing that higher pay is not related to extra duties: some males receive higher pay without doing the extra work; female employees also perform extra duties of equal skill, effort and responsibility; qualified female employees are not given the opportunity to do the extra work (citing Shultz v. Wheaton Glass, 421 F.2d 259 (3d Cir.1969)); the supposed extra duties do not in fact exist; the extra task consumes a minimal amount of time and is of peripheral importance; and third persons who do the extra task as their primary job are paid less than the male employees in question. Prince William Hospital Corp., 503 F.2d at 285-86 (citations omitted). See also Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 450 (D.C.Cir.1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). As we stated in Wheaton Glass, the fact that the male selector-packers performed 16 additional tasks was not enough to support the finding of different work, in part because the district court made no finding that all male selector-packers performed this extra work, 421 F.2d at 262-63. The conclusion to be drawn from the evidence of extra tasks is, of course, one for the trier of fact.
 
 
 43
 Even if this is not a conventional "extra tasks" case, the trier of fact would still have to compare the totality of work performed by the male custodian with that performed by the female custodians. The interpretative regulation issued by the Department of Labor makes clear that, "In applying the various tests of equality to the requirements for the performance of such jobs, it will generally be necessary to scrutinize the job as a whole and to look at the characteristics of the jobs being compared over a full work cycle." 29 C.F.R. Sec. 800.119 (1984) (emphasis added). See also Marshall v. Dallas Independent School District, 605 F.2d 191, 194-95 (5th Cir.1979).
 
 
 44
 Moreover, the mere fact that some female custodians were also earning the premium that the male custodian earned would not end the Equal Pay Act inquiry. As the court in Prince William stated, this court's Wheaton Glass decision suggests, contrary to the district court here, that failure to give the female employees an opportunity to do the extra tasks may support the claim of an Equal Pay Act violation. In Wheaton Glass, the district court had held that the wage differential was justified because having men do extra tasks provided employer "flexibility", 421 F.2d at 263. In reversing, this court noted there had been no finding that the female workers were "unwilling or unable" to do the extra tasks. Id. at 264.
 
 
 45
 As one thoughtful commentator has explained,
 
 
 46
 The basic notion ... is apparently that, given two sex-segregated jobs which are roughly comparable, one might doubt that the purported job differences are the real motive for differences in pay if members of the disfavored sex could do the different work but are denied the opportunity. The more likely inference is that it is not jobs but gender which explains the wage difference. Accordingly, it would be appropriate to downplay job differences which, superficially, suggest unequal work. This is, of course, not to say that jobs which differ "enough" not to have the necessary common core are equal under the Act; that would be engaging in job comparability analysis. Rather the principle, if valid, applies only in resolving otherwise debatable questions of the equality of work.
 
 
 47
 Sullivan, The Equal Pay Act of 1963: Making and Breaking a Prima Facie Case, 31 Ark.L.Rev. 545, 582 (1978). In other words, lack of opportunity to do the extra tasks may be a factor in the ultimate determination whether the jobs are equal.
 
 
 48
 CSI requests that we affirm summary judgment on the ground it presented in the motion it filed in the district court. It asserts that if female custodians were also earning the premium pay, then there could be no violation of the Equal Pay Act from CSI's elimination of the premium. Apparently, the district court agreed 582 F.Supp. at 833 n. 3. The district court did not explain the reasoning behind its conclusion. At least one commentator has addressed this issue, saying:
 
 
 49
 Although the point is seldom directly addressed by the cases, the appropriate rule seems to be that a plaintiff establishes this element of her prima facie case [i.e., that a wage differential is "on the basis of sex"] merely by demonstrating that there exists a single person of the opposite sex who receives wages not equal to her own for equal work in the same establishment.
 
 
 50
 Sullivan, 31 Ark.L.Rev. at 556. Of course, this would not insure a plaintiff's victory. Instead, it would shift the burden to the employer to produce evidence that one of the affirmative defenses, most likely that of establishing that some "factor other than sex", explains the differential. Id. at 558.
 
 
 51
 We reiterate that we express no opinion on the application of the legal principles to the facts in this case. It is apparent that the district court's rulings cannot be affirmed in light of the procedure followed. Accordingly, we will vacate the judgment for defendant and remand to the district court for further proceedings in accordance with this opinion.
 
 GARTH, Circuit Judge, concurring:
 
 52
 Although I concur in the result reached by the majority opinion, I write separately to emphasize my concerns with this case as it has been presented to us on appeal. The briefs, the oral argument, and, indeed, the supplementary submissions that we requested have done little to lessen the confusion reflected in the pleadings and the pretrial proceedings. Suffice to say, I, for one, have had substantial difficulty in identifying and separating out the various claims which the plaintiffs contend they have asserted. I have encountered even greater difficulty in understanding to which of the plaintiffs' purported claims the defendants have replied.
 
 
 53
 It appears to me that pursuant to the Equal Pay Act, 29 U.S.C. Sec. 206(d) (1982), the plaintiffs basically are claiming that although the male laborers and the female custodians perform essentially equivalent functions, they have been paid at differing rates. As a part of this claim, or perhaps as a second claim, the plaintiffs apparently allege that CSI, after it had eliminated the higher-paying laborer classification, had equalized all of its employees' wages at the lower custodial rate, even though the work of both was essentially the same. In addition, the plaintiffs claim that CSI's conduct at the Cedar Crest facility, violated an earlier decree to which CSI had consented in settlement of an equal pay action brought on behalf of CSI custodial workers at the Greater Pittsburgh International Airport.
 
 
 54
 In the context of the present record and in light of our disposition, I do not regard the "prior consent judgment" issue to be of great significance. However, contrary to the majority, I cannot agree that because CSI had entered into a consent judgment at the Pittsburgh Airport, that consent judgment is binding and applicable in the present case. Moreover, because I find it difficult to understand, let alone review, the plaintiffs' claims as they have been presented to us, I would require that a new pretrial hearing be scheduled and a new pretrial order be entered. At the pretrial hearing, the plaintiffs should specify the particular claims which they are asserting so that the defendants can properly identify and address them.
 
 
 55
 On the basis of the instant record, it appears to me that one of the purported claims made by the plaintiffs--the one on which the district court granted summary judgment--may not be a separate and distinct claim at all. Rather, it appears to constitute no more than evidence supporting the basic claim asserted by the plaintiff that CSI, having assumed management of Cedar Crest where sex-based wage differentials existed between male laborers and female custodians, then eliminated the higher-paying laborer classification in order to equalize wages at the lower custodial rate. It may be, however, that I have misinterpreted the thrust of the plaintiffs' pleading, and that the plaintiffs have asserted various other independent claims. If that is the case, then on remand, they will have an opportunity to set forth such contentions so that the defendants and the court may treat with each on the merits. This, in turn, will enable us to review effectively any rulings which may be appealed.
 
 I.
 
 56
 The majority opinion holds that the prior consent decree extends to the present dispute because that decree prohibits CSI from discriminating "within any establishment" on the basis of sex. The majority seizes upon the phrase "within any establishment" to conclude that CSI's consent to the decree thereby extends the decree's operation to any establishment managed by CSI. The decree prohibits CSI from discriminating
 
 
 57
 within any establishment between employees on the basis of sex by paying wages to employees in such establishment at rates less than the rates paid to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.
 
 
 58
 This language, however, does no more than track, and indeed, repeat almost verbatim, the language of the Act which provides in pertinent part:
 
 
 59
 (d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions,
 
 
 60
 29 U.S.C. Sec. 206(d)(1) (1982). The decree thus incorporates the Act's most basic requirement that any wage disparity, in order to be actionable, must occur within a single establishment.
 
 
 61
 Contrary to the majority's reading, I do not read the terms of the decree to extend automatically to all future operations of CSI. The consent decree was entered because of claimed sex-based wage discrimination in the wage rates paid male and female custodians at the Pittsburgh Airport, one of CSI's service locations. The Secretary of Labor has interpreted the term "establishment" to mean a "distinct physical place of business" rather than "an entire business or enterprise." See 29 C.F.R. Sec. 800.108 (1983). Courts have generally upheld this interpretation. See, e.g., Gerlach v. Michigan Bell Telephone Co., 448 F.Supp. 1168 (E.D.Mich.1978) (upholding 29 C.F.R. Sec. 800.108 and finding each individual local office of the telephone company was a separate "establishment" for purposes of the Act); but see Brennan v. N.J. Fields, Inc., 488 F.2d 443 (5th Cir.1973) (where employer had more than 60 stores in retail chain and hiring and wage policies were subject to centralized control, it was not an abuse of discretion to enjoin the employer as a corporate defendant rather than to enter a limited injunction against individual stores found to be in violation of the Act).
 
 
 62
 In the absence of evidence that all CSI employees are centrally hired and assigned to places of employment whose rates of compensation are also centrally determined, see Brennan v. Goose Creek Consolidated Independent School District, 519 F.2d 53 (5th Cir.1975), I do not believe that the prior consent decree should be interpreted to embrace the Cedar Crest facility. Because claims of sexually motivated wage discrimination require a particularistic inquiry, I believe that plaintiffs should be required to prove the factual basis of their claims in the discrete operations of an employer, such as CSI, who engages in multiple activities. In my opinion, the fact that CSI discriminated in payments made to male and female custodians at the Pittsburgh Airport does little to establish whether CSI has discriminated in its practices at Cedar Crest. Clearly, the consent decree itself does not compel such a conclusion.
 
 
 63
 Moreover, even if one assumes the decree applies, the claim that CSI's present conduct violates the decree fails to advance the resolution of the instant case, since the decree does no more than reiterate CSI's primary obligations under the Act. However, even though the majority and I disagree as to the decree's effect, in my opinion, little turns on the ultimate consequences of our disagreement, because the core of the parties' dispute still must be resolved, i.e., did CSI discriminate in wages between male laborers and female custodians on the basis of sex.
 
 II.
 
 64
 With respect to the Brobst plaintiffs' substantive claims under the Act, I agree that summary judgment cannot properly be entered. I endorse the majority's holding that the district court erroneously precluded the plaintiffs from pursuing their primary claim by granting CSI's motion in limine, a motion whose effect was equivalent to granting summary judgment for CSI. I would simply add that neither the record before us nor the submissions of the parties have disclosed or developed any other claim with sufficient clarity to permit a determination that subsidiary claims of wage discrimination among custodians can be resolved separately from the primary claim of wage discrimination between custodians and laborers. Indeed, it appears to me that the other claims urged upon us by the plaintiffs do no more than parallel the very inquiry necessary to establish the substantial equality of laborer and custodian work.
 
 
 65
 To the extent that the plaintiffs have stated a claim ostensibly different from their primary claim, I read that claim as asserting that only the male custodian was allowed to work as a laborer, thus discriminating against the female custodians. As the majority notes, the district court sought to resolve this issue by finding that the work for which the male custodian earned a premium, differed from the work performed by female custodians. This finding, however, settles the factual dispute at the heart of the plaintiffs' action. Because the record fails to demonstrate that more than one claim exists or that, if two claims are indeed identifiable, they are separable, I believe that summary judgment could not be granted where the critical dispute between the parties remained unresolved.
 
 III.
 
 66
 For the reasons expressed, I would hold that the prior consent decree is irrelevant to the present dispute and that the plaintiffs' claims must be remanded to the district court for further proceedings. However, in light of the vexing imprecision with which the plaintiffs have articulated their claims, I believe little progress can be made in resolving the equal pay issues unless a new pre-trial conference is held, and a comprehensive pretrial order is entered. I express no opinion as to the eventual application of the Equal Pay Act to the facts of this case once issue has been joined on claims that are properly defined.
 
 
 
 *
 Hon. Maryanne Trump Barry, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 In pertinent part, the Act provides:
 No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.
 29 U.S.C. Sec. 206(d)(1) (1982).
 
 
 [2]
 In a letter dated September 25, 1978, the Regional Solicitor stated his view as follows:
 From all the information supplied to us, it appears that Cedar Crest College, prior to July 3, 1977, was violating the Equal Pay Act by paying female custodial workers less than their male colleagues for doing equal work on jobs that required equal skill, effort and responsibility. When your clients hired these employees, they attempted to eliminate the Equal Pay Act violation by equalizing the pay of the female workers and the male workers. However, they equalized them at the lower female rate. This equalization at the lower rate of pay is directly contrary to section 6(d)(1) of the Equal Pay Act and paragraph 1(c) of the consent judgment. Your clients should have equalized the custodial workers at the higher male rate of pay, which was $.40 an hour more than the female rate.
 
 
 [3]
 Suit was originally filed in the Eastern District of Pennsylvania but was dismissed without prejudice on CSI's motion, relying on Emrick v. Bethlehem Steel Corp., 624 F.2d 450, 453 (3d Cir.1980), where we stated "complaints about the failure of parties to comply with consent decrees [should generally] be brought before the court supervising the decrees." This court affirmed, Brobst v. Columbus Services International, 709 F.2d 1490 (3d Cir.1983)