Kathleen **BYRNES**, Plaintiff,

v.

**HERION, INC.**, Defendant.

Civ. A. No. 90–0318.

United States District Court,
W.D. Pennsylvania.

May 24, 1991.

See also D.C., 757 F.Supp. 648.

James E. DePasquale, Pittsburgh, Pa.,
for plaintiff.

Joseph A. Vater, Jr., Meyer, Unkovic and
Scott, Pittsburgh, Pa., for defendant.

MEMORANDUM OPINION

LEE, District Judge.

On February 20, 1990, plaintiff filed her
Complaint against defendant, Herion, Inc.,
alleging defendant discriminated against

her by violating her rights under Title VII and the Equal Pay Act. 42 U.S.C. § 2000e–2(a)(1) and 29 U.S.C. § 206(d)(1).

On September 18, 1990, following the close of discovery, defendant filed its Motion for Summary Judgment pursuant to Rule 56(b) of the Federal Rule of Civil Procedure. The Court granted defendant's Motion, in part, determining that plaintiff's Title VII claim was time-barred. Plaintiff's remaining claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1), proceeded to a non-jury trial on October 15, 1990.

### FINDINGS OF FACT

1. Plaintiff, Kathleen Byrnes, age 28, is a 1985 graduate of Edinboro University from which she holds a Bachelor of Arts degree with a major in accounting and a minor in computer science.

2. Immediately following her graduation, Plaintiff began her accounting career by assuming the position of auditor of student accounts with the University of Pittsburgh at an annual salary of $12,000.00 per year. Plaintiff also worked for the public accounting firm of Chamberlin Shaffer for a two month period prior to becoming employed by defendant.

3. Defendant's former Chief Accountant/Controller, David Grayson, (Grayson) was the holder of a Bachelor of Science degree from Indiana University of Pennsylvania with a concentration in the field of Accounting. Grayson also attended Point Park College from which he attained a Master of Science degree in Computer Science. Parenthetically, we note defendant's titles of Controller and Chief Accountant are used interchangeably and they apply only to Grayson during his tenure with defendant.

4. Grayson had been Chief Accountant/Controller for defendant from February, 1982, through October, 1987, at which time he resigned his position. Grayson's duties for defendant during this period was to provide professional accounting services as Chief Accountant/Controller for defendant Herion and its related company, Benton. Benton is not a part of this litigation.

5. Plaintiff interviewed with defendant for the position of staff accountant in early March of 1987. At the time, defendant's accounting staff consisted of two positions, one held by Susan Best and the vacant position for which plaintiff was interviewing. A third accounting position was held by Dennis Collins who performed accounting functions for Benton. Collins' work was independent from that of defendant.

6. Grayson took part in the interview process and recommended that plaintiff be hired for the accounting position at a starting salary between $15,600 and $16,000. On March 23, 1987, defendant's president, Anton Bouvier, hired plaintiff to serve as defendant's staff accountant at an annual salary of $16,000.00.

7. Grayson left the employ of defendant on or about October of 1987 leaving a vacancy in the position of Chief Accountant/Controller.

8. Plaintiff did not formally apply for the Chief Accountant/Controller position because she believed she was not with defendant long enough to apply for the position.

9. During the approximate one month period between Grayson's departure and the hiring of his successor, plaintiff performed a portion of Grayson's duties including a month end closing, preparation of the month end closing, and the posting of all journal entries. During this period, plaintiff reported to Bouvier.

10. On November 4, 1987, David Kosar (Kosar) was hired by defendant to serve as Chief Accountant at an annual salary of $28,000.00, some $2,000.00 less than the salary requested by Kosar when he interviewed for the position. Defendant's decision to hire Kosar at a salary of $28,000.00 per year was based upon the relative value defendant placed upon Kosar's educational background, professional experiences, and the existing market conditions.

11. At the time Kosar was hired, defendant's accounting staff consisted of plaintiff, Susan Best and Sandy Snare. Best performed accounting and purchasing functions while Snare was promoted from the

mail room to do accounting and sales-related work.

12. Kosar assumed many, but not all of the duties held by his predecessor, Grayson. He was, however, involved in special projects under the direction of Bouvier designed to draw upon Kosar's background in computers.

13. Kosar is a 1973 graduate of Westminster College from which he holds a Bachelor of Arts degree in accounting.

14. From 1974 through 1980, Kosar was employed by the Aetna Standard Engineering Company where he served as a general accountant and a cost accountant and billing supervisor. His duties in this capacity included the preparation of hourly payroll, domestic invoicing, posting sales registers and subsidiary ledgers, and the preparation of manufacturing, engineering, sales and administration statements. Kosar was required by Aetna Standard to perform various computer-related duties including placing into computer records such items as payroll, inventory usage reports, accounts payable and engineering reports.

15. From 1980 to 1986, Kosar served as controller for the Pittsburgh Computer Service Corporation where his duties encompassed a variety of accounting responsibilities as well as certain computer-related tasks including but not limited to the development of custom software for customers to process on mainframe, the demonstration of company accounting software packages to potential customers, and the development of software to run payroll, accounts receivable, accounts payable, general ledgers and inventory packages on personal computers.

16. Immediately prior to being hired by defendant, Kosar was a senior accountant for Tetra Engineered Systems and Tetra Recovery Systems. While at Tetra, Kosar was responsible for budget forecasting, accounts payable, accounts receivable, invoicing and month-end closings which he performed on computers that were connected to the corporate mainframe in Houston, Texas.

17. Toward the end of Kosar's tenure with defendant, certain of his responsibilities as Chief Accountant were removed. In early August, 1988, defendant hired James Phillips as a staff accountant to perform computer programming and cost accounting functions which were duties previously performed by Messrs. Grayson and Kosar. These changes were precipitated by defendant's desire to have an individual handle more computer-related work than Kosar had been capable of providing.

18. For a brief period of time prior to Kosar's departure, plaintiff assumed 20 to 25 per cent of Kosar's Accounting duties while maintaining her own responsibilities. However, plaintiff did not assume any of Kosar's special project duties.

19. Due primarily to his inflexibility toward getting acquainted with the existing computer system and his inability to control accounting department personnel, Kosar was given a ninety-day termination notice by defendant. The long term notice was given in order to facilitate Kosar's completion of defendant's price list. Ultimately, Kosar left the employ of defendant on August 31, 1988.

20. Prior to Kosar's departure, plaintiff had informed defendant she was unsatisfied with her salary in that it was not commensurate with the duties she was performing. As a result, on March 23, 1988, plaintiff received a raise from $16,000.00 to $17,600.00. She had asked for a salary in the vicinity of $19,000.00 to $20,000.00. Plaintiff's raise reflected defendant's generally favorable attitude toward her work.

21. For a period of several months prior to August 1, 1988, plaintiff performed many, but not all of Kosar's duties as Chief Accountant, as they had and were continuing to evolve, without the benefit of having the title of Chief Accountant or an increase in salary.

22. Plaintiff succeeded Kosar as Chief Accountant on July 1, 1988, which was effective August 1, 1988, at a salary of $19,200.00. Plaintiff and defendant mutually agreed that she would assume the position on a trial basis subject to a later review. Such an arrangement was reached in light of plaintiff's limited experience.

23. As Chief Accountant, plaintiff supervised two staff personnel. When Kosar left defendant's employ, he had supervisory responsibility for two staff personnel.

24. As Chief Accountant, plaintiff did not perform all of the functions previously handled by Kosar. Specifically, plaintiff did not perform cost accounting, reconciliations with banks, and presentations of balance sheets. Nor did she assume any of the special projects for which Kosar was responsible. As such, the duties and responsibilities conferred upon plaintiff as Chief Accountant varied in substance and form from those duties held by Kosar which, in turn, varied substantially from the duties maintained by Kosar's predecessor, Grayson.

25. In January of 1989, plaintiff complained to defendant that her salary was inadequate based upon the work she was being asked to perform. On January 27, 1989, plaintiff's salary was increased to $23,000.00, an amount which was approximately $1,000.00 short of the salary plaintiff requested. Plaintiff's salary increase was premised upon defendant's belief that she had performed well in her position.

26. On February 14, 1989, plaintiff asked defendant to increase her salary to $28,000.00. Shortly after defendant's refusal to increase plaintiff's salary, plaintiff filed a complaint with the Equal Opportunity Employment Commission.

27. Plaintiff left the employ of defendant November 30, 1989, to take a position with Trinity Industries as its Plant Accountant at a starting salary of $28,000.00 per year.

## DISCUSSION OF ISSUES

Plaintiff asserts in March of 1988, she began performing the duties of the Chief Accountant at a pay scale of $12,000.00 per year less than the salary of the Chief Accountant she replaced and she continued as the Chief Accountant *de facto* at a salary of $8,800.00 per year less than her predecessor. Plaintiff contends on February 1, 1989, her salary was raised to a level that was $5,000.00 per year less than the salary received by the previous Chief Accountant.

Plaintiff maintains she was at all times better qualified than her male predecessor, that her duties were more numerous, and that the primary, if not sole basis for the salary disparity, between herself and David Kosar was gender based.

Defendant maintains that Kosar was hired on the basis of his 14½ years experience as an accountant, his six years as a controller for another company, and his considerable computer background.

Defendant also asserts that plaintiff initially decided not to pursue the position of Chief Accountant because she did not believe she had been with defendant long enough to apply for the vacant position.

Kosar's duties, according to defendant, were significantly different from the duties assumed by plaintiff when she became Chief Accountant. Both were responsible for the final preparation of regular accounting statements, but Kosar was involved with several projects and other accounting functions which, because of limited experience, plaintiff was unable to assume.

Defendant claims that 25 to 30% of Kosar's work was eventually handled by plaintiff and that, in fact, another person was hired to perform some of Kosar's duties in anticipation of Kosar's departure.

Defendant also maintains inasmuch as it was impressed with plaintiff's potential and given her limited experience, the decision to hire her as Chief Accountant was made with the aim of permitting her to grow into the position.

In sum, defendant argues that the salary disparity between plaintiff and her male predecessor was not gender based, but instead was based upon their relative experience, educational background, and the prevailing market conditions.

## DISCUSSION OF THE LAW

Section 206(d)(1) of the Equal Pay Act reads in relevant part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in

which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex ...

29 U.S.C. § 206(d)(1).

■ A party asserting a claim under the Equal Pay Act bears the initial burden of proving that his/her employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. *Angelo v. Bacharach Instrument Company,* 555 F.2d 1164 (3d Cir.1977) quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). Once this threshold is crossed, the burden shifts to the employer to show there is a legitimate reason for the discrepancy in pay. Afterwards, the burden shifts back to plaintiff to establish by a preponderance of the evidence the reason proffered by defendant is only a pretext. *See Chipollini v. Spencer Gifts,* 814 F.2d 893 (3d Cir.1987).

■ Under the Equal Pay Act, job content is controlling; the test is not the identity of the positions under review but whether they can be said to be of a substantial equality. However, mechanical and surface similarities are inadequate to establish the equality of two positions. *Angelo v. Bacharach Instrument Company, supra.*

The task of determining whether plaintiff has met her burden of proving the "equal work" component of her claim is guided by a determination of whether the jobs compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical. *Brobst v. Columbus Services International,* 761 F.2d 148 (3d Cir.1985). If plaintiff establishes the existence of this common "core", the inquiry then turns to whether the different or additional tasks make the work substantially different. *Brobst v. Columbus Services,* 761 F.2d at 156. In any event, the Court is mindful that a pragmatic approach to the issue of "job equality" is suggested by the *Brobst* Court. (See 761 F.2d at 156, and the Circuit Court's observation of the United States Supreme Court's approach to this issue in *Corning Glass Works v. Brennan,* 417 U.S. at 202–03, 94 S.Ct. at 2231–32).

■ In view of the foregoing, the Court concludes that plaintiff has failed to meet her threshold burden of proving the work she performed was substantially equal to the duties performed by her predecessor, Kosar. Neither immediately before Kosar's departure, nor after, did plaintiff assume a significant portion, or "core" of Kosar's duties. Plaintiff was not asked to perform such duties held by Kosar as cost accounting, bank reconciliations, or several of the special projects performed by Kosar under the direction of Bouvier. Moreover, while both plaintiff and Kosar's duties as Chief Accountant carried the responsibility for the final preparation of regular accounting statements, plaintiff assumed only 25 to 30% of Kosar's work.

It is evident from the facts that the position of Chief Accountant was evolving in terms of the expectations placed upon its holder. In large part, the expectations were governed by defendant's needs as much as they were by the holder's particular expertise. To the extent that there was any overlay between the duties of Kosar and plaintiff in the capacity of Chief Accountant, a showing that the positions held by Kosar and plaintiff were merely comparable, without more, is not sufficient to give rise to an inference that those positions were "equal" as that term is used in the Equal Pay Act. *Angelo v. Bacharach Instrument Company, supra.*

■ Finally, we note that were plaintiff to have met her initial burden of showing "equal work", the facts of this case clearly show that defendant substantiated its higher level of compensation for Kosar by virtue of his educational background, computer capabilities, fourteen ½ years of accounting experience and the defendant's particular needs at the time it was searching for Grayson's successor. By way of comparison, Kosar had nearly five times the relevant experience as that held by plaintiff not to mention his superior computer skills.

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

1. Plaintiff has failed to establish that her salary as defendant's Chief Accountant was less than her male predecessor's as a result of gender.

2. Plaintiff has failed to show that she and her predecessor performed equal work as contemplated by the Act and the relevant case law.

3. Pursuant to Section 206(d)(1)(iv) of the Equal Pay Act, defendant has justified the salary differential paid to plaintiff and Kosar based on such factors other than sex as, educational background, 14½ years of accounting experience, superior computer skills, and defendant's particular needs at the time it hired Kosar and plaintiff.

An appropriate Order will be entered.

## ORDER

AND NOW to wit, this 24th day of May, 1991, upon consideration of the evidence presented to the Court in a non-jury trial of Civil Action number 90–318,

Judgment is hereby entered in favor of defendant, Herion, Inc., as against plaintiff, Kathleen Byrnes.

## ORDER

AND NOW to wit, this 24th day of May, 1991, upon consideration of defendant's Motion for Counsel Fees and Costs pursuant to 42 U.S.C. § 2000e–5(k),

it is HEREBY ORDERED the discretionary fees and costs shall not be awarded inasmuch as the Court is satisfied that plaintiff's Title VII claim was not brought in bad faith, or for harassment purposes, or was frivolous, unreasonable, or without foundation.