Elanor A. BROBST, Sharon M. Middlecamp, Robert N. Buckwalter, Marian E. Stettler, Claudia Wotta, Verna S. Undercuffeler, Alice S. Meissner, Dennis G. Cook, Jean R. Berger, Jean R. Berger, Executrix of the Estate of Marie M. Fritz, Madeline Dorney, Carmella Hawk, Donald Lakovits, Elaine Seislove, Carol Snyder, Bernard Polit, Scott Rehrig, Plaintiffs,

v.

COLUMBUS SERVICES INTERNATIONAL, A Corporation, Defendant.

Civ. A. No. 82–2283.

United States District Court, W.D. Pennsylvania.

March 30, 1984.

Jane A. Lewis, Pittsburgh, Pa., Thomas J. Calnan, Calnan & Orloski, Allentown, Pa., for plaintiffs.

Diane Tucker, Pittsburgh, Pa., for defendant.

## OPINION

MENCER, District Judge.

The Equal Pay Act ("Act"), 29 U.S.C. § 206(d)(1) (1963), provides that

> [n]o employer ... shall discriminate, within any establishment ..., between employees on the basis of sex by paying wages to employees at such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions ...

*Id.* The Act specifically prohibits an employer from reducing the wage rate of any employee to comply with the "equal pay for equal work" dictate. *Id.*

Plaintiffs, present and former custodial employees of defendant Columbus Services International ("CSI"), allege that CSI violated the Act by lowering the wage rates of certain of its male employees at Cedar Crest College to the level of the predominantly female custodial workers at the Allentown, Pennsylvania institution.[1] Jurisdiction over the subject matter exists pursuant to 29 U.S.C. § 216(b) (1977).

### I

CSI has presented the court with three pretrial motions: a motion in limine, a motion for summary judgment, and a motion for partial summary judgment. The intricacies of the Equal Pay Act necessitate a particularly detailed understanding of the factual background of this case before the pending motions may be addressed. Accordingly, after carefully reviewing the voluminous record, the court has constructed the following factual exposition.

CSI has employed maintenance personnel at Cedar Crest College since July 3, 1977 ("CSI period"). Prior to that date, Cedar

---

1. The court finds no merit in plaintiffs' claim that CSI also violated the consent judgment entered in *Usery v. Columbus Services International,* Civil Action No. 76–849 (W.D.Pa. Jan. 11, 1977). Despite the terms of the order in *Usery,* that case involved CSI employees at Greater Pittsburgh International Airport, and did not concern CSI's operations at Cedar Crest College.

Crest employed the institution's maintenance staff ("Cedar Crest period"). During the Cedar Crest period, maintenance employees were classified as either custodians or laborers. Custodians, a job classification composed predominantly of females, engaged in general cleaning activities such as mopping, dusting, scrubbing and vacuuming. Laborers, a job classification which plaintiffs allege was composed entirely of males, carried trash and operated power cleaning, buffing, stripping, sanding and shampooing equipment. Laborers were paid forty cents per hour ($.40/hr) more than custodians ("laborer's premium" or "premium rate"). On occasion during the Cedar Crest period, at least one custodian, a male, was asked to perform work normally done by laborers. When that occurred, Cedar Crest compensated the custodian at the premium rate for the hours he spent doing laborer's work.

The maintenance workers were represented by a union during the Cedar Crest period, and when the collective bargaining agreement between the college and the union expired in July 1977, Cedar Crest apparently decided to engage a maintenance operations specialist to employ and manage maintenance personnel at the college. CSI assumed that responsibility and entered into a new collective bargaining agreement with the same union.

CSI immediately reclassified all maintenance staff as custodians. Although several employees of both sexes frequently performed laborer's work, at no time during the CSI period were any employees paid the laborer's premium for that work. The union contended that CSI's failure to pay the premium rate to custodians performing laborer's work violated the newly signed CSI-union labor contract. The parties submitted the matter to voluntary arbitration. The union prevailed on May 2, 1978; Arbitrator Morrison Handsaker concluded that the labor contract had been violated, awarded the affected employees back-wages, and put CSI on notice of the violation. CSI has not complied with the arbitrator's award.

Plaintiffs, present and former custodial employees of CSI, then initiated this action maintaining that CSI violated the Equal Pay Act by reducing the wage rate of male employees to the lower wage rate received by the predominantly female custodial employees. Plaintiffs' claim consists of two components: (1) CSI's elimination of the higher-paying, all-male laborer classification amounted to a reduction in the male wage rate to the lower, predominantly female, custodial wage rate; (2) CSI's failure to pay the premium wage rate to custodians performing laborer's work, coupled with the fact that during the CSI period both male and female custodians have performed laborer's work, amounts to a reduction of the wage rate paid to the one male custodian who performed laborer's work, at the laborer's premium, during the Cedar Crest period.

II

CSI's motion in limine seeks to preclude plaintiffs from contending that custodians and laborer's performed equal work for purposes of the Act. Although none of CSI's employees were classified as laborers, proof by plaintiffs that the allegedly all-male laborer job was equal to the custodian job would support plaintiffs' claim that CSI reduced the wage rates of male employees, by eliminating the laborer job classification, to equalize male and female wage rates. If, however, the jobs were not equal, the Act's "equal work" threshold would not have been crossed. Accordingly, CSI's classification of all employees as custodians, including former laborers at a reduced wage rate, would not constitute a violation of the Act.

The record, including plaintiffs' answers to interrogatories regarding the content of the two jobs, shows that the custodian performed significantly different activities than did the laborer, and vice versa. While the Act does not require that two jobs be identical for its "equal pay" mandate to apply, substantial equality of job content is required. *Usery v. Allegheny County Institution District*, 544 F.2d

148, 153 n. 4 (3d Cir.1976) *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977). The court finds, as a matter of law, that the custodian job and the laborer job did not constitute "equal work" for purposes of the Equal Pay Act. *See Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164 (3d Cir.1977). This determination having been made on the basis of substantial record evidence, plaintiffs may not contend otherwise. CSI's motion in limine is granted.

## III

The court's conclusion that the custodian job and the laborer job were not equal prevents plaintiffs from pursuing further one of the two components of their claim. As noted above, because the "equal work" threshold was not crossed, CSI's elimination of the higher-paying laborer classification could not violate the Act, even assuming that the laborers were all males and the custodians were all females. Whether or not summary judgment is appropriate in this case, however, depends on an analysis of the second component of plaintiffs' claim.

Plaintiffs contend that CSI's failure to pay the premium wage rate to custodians performing laborer's work, coupled with the fact that during the CSI period both male and female custodians have performed laborer's work, amounts to a reduction of the wage rate paid to the one male custodian who performed laborer's work, at the laborer's premium, during the Cedar Crest period. Because the Act proscribes equalizing male and female wage rates at the lower (female) rate, plaintiffs' theory would require CSI to pay the premium rate to all custodians who perform laborer's work. While the result sought under plaintiffs' theory may have merit,[2] the Equal Pay Act is not the appropriate vehicle by which plaintiffs may achieve that end. If the court reads the record in the light most favorable to plaintiffs, thereby accepting plaintiffs' version of the facts, it concludes that CSI has not discriminated against female employees at Cedar Crest College by paying female employees a lower wage rate than male employees for equal work, or by equalizing male and female wage rates by reducing the wage rate paid to males.

Plaintiffs maintain that only one custodian, a male, performed laborer's work at the premium rate during the Cedar Crest period.[3] Cedar Crest's failure to afford female custodians that same opportunity, while perhaps actionable under Title VII, 42 U.S.C. §§ 2000e–2000e–17 (1978), does not amount to a violation of the Equal Pay Act.[4] The work for which Cedar Crest paid the premium to the male custodian was different from the work done by the female custodians.

To prove that CSI violated the Act, plaintiffs would have the court infer that Cedar Crest would not have paid female custodians the premium rate to perform laborer's work during the Cedar Crest period, had Cedar Crest allowed any female custodians to do that work. This inference is necessary to establish a "female" wage rate to which the employer may not lower the "male" wage rate (for equal work) to comply with the Act.[5] Having made the

---

2. Indeed, Arbitrator Handsaker ruled that the CSI-union collective bargaining agreement required the result sought here.

3. CSI maintains that both male and female custodians performed laborer's work and received the laborer's premium during the Cedar Crest period. While this disagreement between the parties creates a factual issue, it is not a material one so as to preclude summary judgment disposition because under either version of the facts, no violation of the Act can be proved. Plaintiffs' version is discussed further in the text. Under CSI's version, the Act was not violated because CSI's failure to pay the premium rate to custodians doing laborer's work affected custodians of both sexes.

4. Similarly, Cedar Crest's alleged failure to afford any females an opportunity to be full-time laborers would also be actionable under Title VII, but does not constitute a violation of the Equal Pay Act.

5. Plaintiffs' inappropriately rely on the uniform wage rate which CSI now pays to all custodians as establishing the lower "female" rate to which CSI reduced the male custodian's rate for doing

inference, plaintiffs conclude that CSI reduced the wage rate earned by the male custodian who performed laborer's work to equalize it with the rate at which CSI subsequently compensated all custodians, male and female, for laborer's work.

The well-developed record in this case contains no evidence to buttress the critical inference, other than CSI's uniform custodian wage rate. Accordingly, the court finds that plaintiffs have not, and cannot, make a prima facie showing that CSI equalized male and female wage rates at a lower "female" rate. CSI's motion for summary judgment is granted.[6]

## IV

CSI's motion for partial summary judgment has been rendered moot, and is denied for that reason.

laborer's work. The uniform wage rate may serve as one link in a chain of circumstantial evidence which plaintiffs might offer to prove that Cedar Crest was biased against female custodians and would, therefore, have paid them at a rate less than the premium rate for doing laborer's work. If plaintiffs could complete the circumstantial chain, then CSI's subsequent uniform rate would amount to a proscribed reduction of "male" wages to bring the Cedar Crest wage rate scheme into compliance with the Act. Because plaintiffs, through discovery, have made no effort to establish that Cedar Crest discriminated against female custodians, the uniform wage rate evidence, standing alone as it does here, is insufficient to establish a prima facie violation of the Equal Pay Act.

6. The court finds that the correspondence between CSI and the Department of Labor is not probative of CSI's alleged violation of the Act. The factual dispute as to the meaning of those letters, therefore, was not material to this decision.