Eleanor A. BROBST, Patricia M. Heiney, Marie M. Fritz, Sharon M. Middlecamp, Luella M. Hamm, Verna Millward, Robert Lee Little, Robert N. Buckwalter, Marian E. Stettler, Claudia Wotta, Verna S. Undercuffler, Alice S. Miessner, Dennis G. Cook, Jean R. Berger, and Elizabeth S. LeVan, Jean R. Berger, Executrix of the Estate of Marie M. Fritz, Madeline Dorney, Carmella Hawk, Donald Lakovitz, Elaine Seislove, Carol Snyder, Bernard Polit, Scott Rehrig, and Victor Bortz

v.

COLUMBUS SERVICES INTERNATIONAL, a corp. and Walter R. Morgan, Indiv. and as Officer of Deft. Corp.

Appeal of Eleanor L. BROBST, Jean Berger, Sharon M. Middlecamp, Robert Buckwalter, Marian E. Stettler, Madeline Dorney, Jean R. Berger, Executrix of Estate of Marie M. Fritz, Verna S. Undercuffler, Claudia Wotta, Alice S. Meissner, Dennis G. Cook, Carol Snyder, Donald Lakovitz, Carmella Hawk, Elaine Seislove, Bernard Polit and Scott Rehrig.

No. 86–3532.

United States Court of Appeals, Third Circuit.

Argued May 12, 1987.

Decided July 27, 1987.

Rehearing and Rehearing In Banc Denied Aug. 17, 1987.

Richard J. Orloski, Orloski & Hinga, Allentown, Pa., for appellants.

Paul M. Puskar, Baskin Flaherty Elliott & Mannino, P.C., Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, MANSMANN, Circuit Judge, and KATZ, District Judge.*

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This matter comes before us on appeal from a judgment upon a verdict in favor of the defendant, Columbus Services International ("CSI"), in the plaintiffs' action under the Equal Pay Act of 1963. *See* 29 U.S.C. § 201 note (1982); 29 U.S.C. § 206(d) (1982).[1] We possess jurisdiction pursuant to 28 U.S.C. § 1291 (1982). We find that the district court adequately charged the jury that the plaintiffs bore the burden of proving that CSI had discriminated against them on the basis of sex. Moreover, evidence regarding the gender of, and wages paid to, the plaintiffs and the allegedly preferred CSI employees reached the jury in the form of payroll records. Thus, the trial judge's error in twice excluding testimony concerning the sex of CSI's employees was harmless. We will, therefore, affirm the district court's judgment.

### I.

The plaintiffs are present or former maintenance employees of Cedar Crest College ("Cedar Crest" or "the college") in Allentown, Pennsylvania. Before July 3, 1977, the college classified the workers as either "laborers" or "custodians." The laborers were all male and earned forty cents per hour more than the custodians who were, all but one, female. Cedar Crest paid this premium to the laborers averredly since they maintained the college grounds and so had chores relatively heavier than the custodians' tasks. The laborers also occasionally had to operate floor buffers, rug shampooers, and similar power equipment indoors. The custodians, on the other hand, cleaned rest rooms, vacuumed and dusted, and emptied trash. However, a custodian would receive the $.40 per hour premium whenever he had to perform "laborers' work."

On July 3, 1977, CSI took over the maintenance work at Cedar Crest. CSI then reclassified all of the employees as "custodians" and compensated them at the lower,

---

* Honorable Marvin Katz of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. 29 U.S.C. § 206(d) states in relevant part:

   (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

custodian scale without altering their duties. Four employees filed grievances. An arbitrator thereupon ordered CSI to pay the premium to custodians while they did laborers' work. CSI refused on the ground that a consent decree in an unrelated Equal Pay Act case barred CSI from paying different wages for substantially equal work. CSI then petitioned the Department of Labor ("DOL") to approve CSI's position, but DOL opined that CSI should have to compensate all of its custodians at the higher, laborer rate.

The plaintiffs, in turn, sued CSI, alleging violations of the Equal Pay Act and of the consent decree.[2] The district court, on CSI's motions in limine and for summary judgment, found no breach of the consent decree by CSI, concluded that the custodian and laborer jobs in no way constituted "equal work" for Equal Pay Act purposes, and granted summary judgment for CSI since the plaintiffs supposedly failed to establish a prima facie case that "CSI equalized male and female wage rates at a lower 'female' rate." *Brobst v. Columbus Services Int'l,* 582 F.Supp. 830, 834 (W.D.Pa. 1984).

On appeal, we vacated and remanded. *Brobst v. Columbus Services Int'l,* 761 F.2d 148 (3d Cir.1985). We determined that the district court erroneously decided the motion in limine on different grounds than CSI asserted, effectively transformed the motion into one for summary judgment and, thereby, precluded the plaintiffs from marshalling evidence to show a genuine issue of material fact on the "equal work" question. *Id.* at 154. We further held that the district court improperly made factual findings instead of accepting CSI's proffered theory on CSI's motion for summary judgment. *Id.* at 157–58.

At trial, the plaintiffs introduced evidence that, *inter alia,* the custodian and laborer work required equal skill, effort, and responsibility and offered similar working conditions. When the plaintiffs sought

to prove that the laborers were all males, however, the trial judge sustained the defendant's relevancy objection.

MR. ORLOSKI [for the plaintiffs]: The people the Judge has just been talking about [the laborers], are those people paid the same rate as the custodians?

MR. SNYDER [plaintiff]: No, sir.

MR. ORLOSKI: The people that the Judge was just talking about, what is their sex?

MR. SNYDER: They are all males.

MR. PUSKAR [for the defendant]: Your Honor, I am going to ask that be stricken. This is not a civil rights case. It doesn't matter what sex they are. It has no relevancy to this cause of action, this lawsuit at all.

THE COURT: We will sustain the objection and strike the last question and answer and ask the jury to disregard it.

Subsequently, a similar exchange occurred.

MR. ORLOSKI: The laborers are practically all now male and have always been all male?

MS. MIDDLECAMP–WAITKUS [plaintiff]: Yes. That's correct.

MR. PUSKAR: Same objection, Your Honor.

THE COURT: All right. We, of course, sustain the objection. Any other questions of the witness, Mr. Orloski?

The jury returned a verdict for the defendant. This timely appeal followed.

## II.

The plaintiffs present three points of error. First, they argue that the district court improperly excluded proof of the gender of the plaintiffs and of the laborers on the fallacious theory that a plaintiff's sex lacks relevance in an Equal Pay Act case. Second, the plaintiffs contend that the trial judge wrongly refused to admit evidence that the defendant's counsel unilaterally terminated the deposition of James Suther-

---

**2.** The district court for the Eastern District of Pennsylvania dismissed the suit without prejudice to allow the plaintiffs to bring their complaint before the district court for the Western District of Pennsylvania which supervised the

consent decree. *See Emrick v. Bethlehem Steel Corp.,* 624 F.2d 450, 453 (3d Cir.1980). We affirmed in *Brobst v. Columbus Services Int'l,* 709 F.2d 1490 (3d Cir.1983).

land, a former CSI officer, and to grant the plaintiffs' request for an adverse inference charge. Finally, the plaintiffs insist that the district court erred in holding as a matter of law that the applicable statute of limitations[3] precluded the plaintiffs from recovering damages incurred after they filed their complaint and, further, in ruling that the statute continued to run while the case remained pending in the Eastern District of Pennsylvania. *See* supra note 2.

On appeal, our review of the trial judge's relevancy rulings is plenary. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 269 (3d Cir.1983). We evaluate the district court's decision on points for charge by an abuse of discretion standard. *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984). We must "determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *Id.*, *quoting Ayoub v. Spencer*, 550 F.2d 164, 167 (3d Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). At all events, "[t]o the extent the parties challenge the choice, interpretation, or application of legal precepts, we always employ the fullest scope of review[.]" *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981).

### III.

### A.

### 1.

We turn first to the allegation which we consider most serious—that the district court twice excluded from the jury testimonial evidence which would show that each job category was filled almost exclusively by the members of one sex. On the two occasions cited above, the district court cit-

ed relevancy grounds in excluding the evidence. We conclude that the district court erred in excluding the evidence.

■ By the Equal Pay Act, Congress sought "to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of 'many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974), *quoting* S.Rep. No. 176, 88th Cong., 1st Sess. 1 (1963). The Supreme Court, accordingly, has emphasized that "[i]n order to make out a case under the Act, the [complainant] must show that an employer pays different wages to employees *of opposite sexes* 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works*, 417 U.S. at 195, 94 S.Ct. at 2228 (emphasis added), *quoting* 29 U.S.C. § 206(d)(1) (1982). Indeed, our initial opinion in this matter, which vacated the district court's judgment for the defendant and remanded the case for further proceedings, repeatedly stressed that lucid mandate. *See Brobst*, 761 F.2d at 150.

■ Despite the manifest statutory aim of eradicating sex-based wage discrimination, the trial judge inexplicably ruled that the gender of the plaintiffs and of the allegedly preferred laborer class lacked relevance. Nonetheless, we hold that error harmless in light of the record. The district court's charge adequately put the plaintiffs' sex vis-a-vis that of the laborers at issue, and the jury received, among oth-

---

**3.** Title 29 U.S.C. § 255(a) (1982) provides:

Any action commenced on or after May 14, 1947, to enforce any causes of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]

er evidence, CSI payroll records noting the gender of each employee.

## 2.

■ Fed.R.Civ.P. 61 states the familiar standard for adjudging whether error is harmless.[4] As the rule provides, we will reverse the district court only if its error "affect[s] the substantial rights of the parties."

Here, the trial judge's jury instruction managed to rectify the substantial error of his evidentiary rulings. The court charged:

The Equal Pay Act, roughly speaking, prohibits wage discrimination based upon sex or [sic] the performance of equal work. It provides in pertinent part as follows. No employer subject to this section shall discriminate between employees on the basis of sex by paying wages to employees at a rate less than the rate at which he pays wages to employees of the opposite sex for equal work on jobs, the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions.

In order to prevail on their claim, ... the Plaintiffs must prove that they and members of the opposite sex have been employed by Columbus Services International doing equal work on jobs, the performance of which requires equal skill, effort and responsibility.

... If you find as a fact that Columbus Services International consolidated most of the work previously done by the male labor force with the work done by the predominantly female custodians at the lower custodian rate, that would constitute a violation of the Equal Pay Act

provided that the work previously performed by the laborers and custodians required equal skill, effort and responsibility and was performed under similar working conditions.

... Finally, the Plaintiffs must prove that the distinction in pay rates was based on sex or that they have been discriminated against on the basis of their sex. In other words, Plaintiffs must show that they have been paid less because they are women and in determining this issue, you consider all the evidence in the case.

Following a post-charge conference at sidebar among the court and counsel, the court further instructed the jury:

We will also charge this jury that for purposes of proving their claim, the Plaintiffs initially need only to prove that there is a single person of the opposite sex who received wages not equal to hers for substantially equal work for the same establishment. If you find the Plaintiffs met their initial burden, then the burden shifts to the employer to produce evidence of an affirmative defense that some factor other than sex explained the differential between the higher male rate and the lower female rate.

Thus, the record evinces that the district court sufficiently put in issue the gender of CSI's employees.

Moreover, even though the court twice excluded testimony relating to the sex of the laborers, the jury learned that information from other evidence in the record. Most significantly, CSI's payroll registers for 1979 through 1982 were admitted into evidence and the jury had the use of them during its deliberations.[5] Those records in-

---

4. Rule 61 states:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect

in the proceeding which does not affect the substantial rights of the parties.

5. Before trial, the defendant stipulated to the authenticity and admissibility of, *inter alia,* CSI's payroll registers for July 16, 1977 through November 12, 1983. The court admitted these records into evidence during the plaintiffs' case over CSI's objection, noting that they "ha[d] relevance as to computing the damages claimed." The court later ruled, however, that the plaintiffs could collect damages only for the two or three years prior to filing their complaint on October 29, 1982 and, therefore, withdrew

dicate that the laborers were men and the custodians were, except one, women. As well, during the defendant's case, counsel read into evidence the deposition of James Sutherland, the former CSI vice-president, who conceded on cross-examination that the laborers "generally" were all male.[6] Reed Raudenbush, the one-time physical plant supervisor for CSI at Cedar Crest, on cross-examination also related the gender of CSI's employees.[7]

In light of this record we must label harmless the district court's error of twice excluding proof of the sex of the laborers.

### B.

▇ The plaintiffs next argue that the district judge wrongly denied them leave to read to the jury the end of Sutherland's deposition which, the plaintiffs aver, CSI's counsel unilaterally terminated. They also insist that the court should have charged the jury members that they could infer that Sutherland would have answered further questions by the plaintiffs adversely to CSI.

The principle that the trial judge possesses discretion to control the extent of cross-examination and to refuse points for

charge requires no citation of authorities. Even when the district court rules incorrectly in this regard, the harmless error standard may prevent us from ordering a new trial. Recently the Supreme Court subjected a constitutionally improper denial of a criminal defendant's opportunity to impeach a witness for bias to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

Assuming, *arguendo*, that the district judge erred here, *Van Arsdall* is instructive. There, the Court listed five factors by which reviewing courts should gauge whether a given error is harmless.

These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*

First, CSI's examination of Sutherland occupies thirty-four pages of transcript in

---

from the jury the registers for 1977, 1978, and 1983. The plaintiffs specifically excepted to this change.

6. Sutherland testified as follows:
   MR. ORLOSKI: Do you agree there was a differential between laborers and custodians?
   MR. SUTHERLAND: Yes.
   MR. ORLOSKI: Do you agree that the differential was 40 cents an hour?
   MR. SUTHERLAND: Yes.
   MR. ORLOSKI: Do you agree that the differential for operating power equipment was 40 cents an hour?
   MR. SUTHERLAND: Yes.
   MR. ORLOSKI: Do you agree that the laborers were all men?
   MR. SUTHERLAND: Generally they were.
   MR. ORLOSKI: Do you agree that the custodians were all women except for Robert Buckwalter?
   MR. SUTHERLAND: When?
   MR. ORLOSKI: During the period when Columbus Services International took over the contract, you had all women custodians except for Robert Buckwalter. Yes or no?
   MR. SUTHERLAND: Is that accurate?
   MR. ORLOSKI: I am asking you, your recollection.
   MR. PUSKAR: I can't tell you.

MR. SUTHERLAND: My recollection is that at the time I had hundreds of employees. I believe that Buckwalter, based upon that documentation that I have seen regarding this case, was the only man. But, if we find, based on a further look at the employee list, that there was a second one, I will agree to that. Yes.

7. MR. ORLOSKI: So essentially, then[,] you had roughly 16 custodians?
   MR. RAUDENBUSH: My recollection is that there were 17.
   MR. ORLOSKI: Seventeen custodians and four laborers?
   MR. RAUDENBUSH: That is right.
   MR. ORLOSKI: That is the ratio?
   MR. RAUDENBUSH: That's right.
   MR. ORLOSKI: Custodians were paid less and laborers were paid more.
   THE COURT: And the laborers were men?
   MR. RAUDENBUSH: The four laborers were men. That's correct.
   MR. ORLOSKI: And the custodians were women except for Buckwalter when he came on?
   MR. RAUDENBUSH: That's correct.

the trial record. Sutherland testified to the job content and pay rates of the various employees at Cedar Crest, particularly the laborers and custodians. It seems manifest, though, that his testimony played a less-than-important role in CSI's case. Second, Reed Raudenbush succeeded Sutherland in 1978, appeared at trial, and related essentially the same information on direct examination as Sutherland. Third, after hearing Sutherland's deposition read in open court, Raudenbush unequivocally agreed with Sutherland's testimony. The plaintiffs had every opportunity to cross-examine Raudenbush and could have discredited him on the same bases as Sutherland.

Fourth, the plaintiffs' cross-examination of Sutherland runs for 141 pages of the trial transcript. The record indicates that, although CSI's counsel averredly stopped Sutherland's deposition two hours early, the plaintiffs' lawyer deposed him for approximately four hours. We cannot say, then, that the plaintiffs were not permitted a sufficient chance to interrogate Sutherland. Fifth, even if the damaging potential of Sutherland's complete deposition were fully realized, CSI's case would support the verdict here. Sutherland stated that about five percent of the custodians' and laborers' tasks overlapped. Yet his testimony nowhere hints that he might budge from that position to concede in any way that those jobs were substantially the same. Nothing, finally, in the excluded portions of Sutherland's testimony proves anything relevant to this case. The deposition appears solely to call into question defense counsel's, not Sutherland's, credibility.

## IV.

We, therefore, conclude that any error in the district court's refusal to permit the plaintiffs to read Sutherland's whole deposition to the jury, or to give an adverse inference charge, was harmless. We similarly hold harmless the trial judge's error of twice excluding as irrelevant the proffered testimony regarding the gender of CSI's laborers. That evidence reached the jury from other evidence of record. Because of the opinion we reach on these liability-related issues, we need not decide whether the district court erroneously held that the statute of limitations precluded the plaintiffs from recovering damages incurred after filing the complaint and that the statute continued to run while the case was pending in the Eastern District of Pennsylvania.

The district court's judgment will be affirmed.