BENJAMIN RIVERA and MARY RIVERA, Plaintiffs

v.

GOVERNMENT OF THE VIRGIN ISLANDS,
ADOLPHUS EDNEY, Defendants

Civil No. 75-751

District Court of the Virgin Islands

Div. of St. Croix

April 7, 1976

FRANK A. PADILLA, ESQ., Frederiksted, St. Croix, V.I., *for plaintiffs*

MERWIN, ALEXANDER & O'BRIEN, (JOHN D. MERWIN, of counsel), Frederiksted, St. Croix, V.I., *for defendant, Edney*

OFFICE OF THE ATTORNEY GENERAL (WILLIAM L. NEFF, Assistant Attorney General), Charlotte Amalie, St. Thomas, V.I., *for defendant, Government*

YOUNG, *District Judge*

### MEMORANDUM OPINION AND JUDGMENT

Before the Court is an action brought by plaintiffs Benjamin and Mary Rivera to set aside a tax sale of real property made by the Government of the Virgin Islands, one of the defendants herein, to the other defendant, Adolphus Edney. The plaintiffs allege that the Government failed to comply with many of the statutory requirements for tax sales and that this non-compliance invali-

dates the sale. The complaint seeks to have title in the property revested in the plaintiffs. A court trial was held on March 31, 1976, at which time the matter was taken under advisement.

The plaintiffs purchased Plot No. 123, Estate Little La Grange for $3,500 on September 24, 1969, and properly recorded a Warranty Deed reflecting the conveyance of land to them. When plaintiffs failed to pay their property taxes for tax years 1971 and 1972, the Government exercised its statutory authority to collect the unpaid taxes by attachment and sale of the property of the delinquent taxpayer. Defendant Edney purchased the same property, then assessed at $4,590, at a public auction on March 29, 1974, at a purchase price of $150 which was sufficient to cover the delinquent taxes for the two years.

■ Title 33 of the Virgin Islands Code imposes explicit procedural requirements with respect to the levy and collection of real estate taxes and the attachment and sale of real property because of the nonpayment of taxes. Despite the well established doctrine that any person subject to taxation is responsible for ascertaining the amount of and paying his taxes in full (See 33 V.I.C. § 2495(a)), given the harsh effect of many tax sales on the owner of the property these procedural steps should be strictly followed. In Alphonso Williams v. Arthur Abel and Ruben Wheatley, 6 V.I. 146 (D.V.I. 1969), Circuit Judge Maris wrote, "It is well settled that statutes authorizing and regulating tax sales must be strictly construed in favor of the owner of the land."

■ Though the former owners of the land come into Court as plaintiffs trying to unseat the purchaser at the tax sale, the law, for very sound policy reasons, does not impose upon them the burden of establishing noncompliance with the statutory requirements. There is no presumed regularity of official procedure in this situation.

Instead, the defendant purchaser must establish to the Court's satisfaction that the intended procedure was in fact followed. A very early Supreme Court case, Ronkendorff v. Taylor's Lessee, 4 Peter's U.S. 349, 7 L.Ed. 882 (1830), recognized this principle in saying, "No presumption can be raised in behalf of a collector who sells real estate for taxes, to cover any radical defects in his proceeding, and the proof of regularity in the procedure devolves upon the person who claims under the collector's sale."

There is a sound basis for this rule. It is generally quite difficult to establish the negative of a proposition—that the Government did not comply with the statutory procedure. More importantly, the law does not wish to develop a rule which makes people feel less secure about their ownership of real property. Such a rule would discourage the free transfer of land. Thus, with these concepts in mind, I will review the specific statutory requirements in light of the alleged errors.

Under the statute real property taxes shall be due and payable on June 30th of each year. The taxes become delinquent if not paid within 60 days after that date. 33 V.I.C. § 2494. Though no demand for taxes is necessary (33 V.I.C. § 2495(a)), the code provides that notice that the tax is due shall be published three times in all local newspapers, and posted in frequented public places, not later than the first day of the month in which the tax is to be collected. 33 V.I.C. § 2495(b).

The plaintiffs contend that the Government failed to publish a general notice that taxes were due as required by this section. I find that the Government complied with this requirement for the tax year 1971 by publishing proper notice on May 26, 30 and June 1. No evidence was adduced at trial, however, to establish such compliance with respect to the tax year 1972. I cannot conclude that the plaintiffs were prejudiced by this error though, since

the Government could have attached and sold the property by virtue of delinquent 1971 taxes alone.

Next the statute requires that within 60 days after the date on which taxes become delinquent the tax assessor must publish a list of delinquent taxpayers showing the value of the property and the amount of the unpaid taxes. 33 V.I.C. § 2496. The Commissioner of Finance is required to publish a copy of this list in the same manner provided for by Section 2495. The notice must state that unless the delinquent taxes, together with interest, are paid within 30 days of the first publication date, the property of the taxpayer will be attached and sold in the manner provided in Title 33.

Compliance with Section 2496 is critical to the validity of a tax sale. As Judge Maris wrote in the Williams case, "The statutory requirement for the publication of delinquent tax lists must be strictly followed if there is to be a valid sale." 7 V.I. at 150, citing, inter alia, Martin v. Barbour, 140 U.S. 634 (1891). Without such notice many property owners may not be aware that failure to pay delinquent taxes can have such drastic consequences.

█ The defendants produced no evidence at trial to establish that this general notice to delinquent taxpayers was in fact given. The plaintiff did everything possible to establish that it was not by calling as a witness the advertising manager of the local paper who testified that there were no advertisement billings of this type for September or October 1972, the 60 days after which the taxes became delinquent. This constitutes a serious failure to comply with an important statutory requirement.

· Next the plaintiffs contend that the Government failed to serve the written notice of attachment in compliance with the law and that the certificate of attachment which was prepared was insufficient. Section 2541 of Title 33 requires the Commissioner of Finance, when proceeding

48

to collect taxes by attachment of the property, to prepare a written notice of attachment of the property on which the taxes are owing by the delinquent taxpayer. The attachment is enforceable as soon as a copy of the notice is served personally upon the taxpayer or any member of his family or household of legal age. Section 2541(b) states that a record of this service shall be noted down for subsequent action. If any of the above-named persons cannot be found, service may be effected by leaving a copy with two neighbors of the delinquent taxpayer, and if this cannot be done, by posting notice on the property.

Attempts to notify the plaintiffs personally were unsuccessful since they had moved off the island. Later two certified mail notices were sent return receipt requested to an address in the states. Both notices were returned, one stamped "Moved—left no address", and the other, "Moved —not forwardable". There is no record that any other attempts to give notice of attachment were made.

■ Conceding that the Government did make some attempt to notify the plaintiffs of the attachment, their efforts fell short of what is required by 33 V.I.C. § 2541(b). To quote Judge Maris in the Williams case once again, "No valid sale can be made without a valid warrant or order of attachment where the statute requires it." 7 V.I. at 150. Hence, the manner in which the notice of attachment was served constitutes another substantial defect in the procedure followed herein.

■ Section 2541 requires the Commissioner after the levy of attachment to affix a certificate of attachment to the notice and to record the same. Plaintiffs attack the certificate which was filed here as insufficient as failing to contain some of the elements required by the statute. The certificate of attachment is required to contain, inter alia, a description of, the situation of, and the approximate

boundaries of the attached property. While the Certificate of Attachment (Plaintiffs exhibit #3) is in substantial compliance with this mandate, as a future caution I would advise the Government that the description required by statute should be strictly followed. As I wrote in Wenig and Pellar v. Pemberton and Wheatley, 10 V.I. 210 (1973), with respect to notices of a tax sale which omitted one owner's name and failed to describe the property, "I believe that justice requires an especially strict conformance with procedural statutes when actual notice has not been achieved and when the proceeds of a sale are so singularly disproportionate to the apparent value of the land." 10 V.I. at 211. This is just such a case.

■ The next step after the levy of attachment is that the Commissioner of Finance must advertise the property for auction sale by publishing an advertisement at least twice a week for a period of three weeks in the local newspaper and by posting notices to this effect in public places. The plaintiffs concede that the Government complied with this notice requirement for the tax year 1971 but assert that no such notice was provided for tax year 1972. No evidence was produced to demonstrate that such notice was given for the latter tax year. I cannot find that the plaintiffs were substantially prejudiced thereby, however, since the property could have been attached and sold on the basis of delinquent 1971 taxes alone.

■ Plaintiffs also object that the auction was conducted by employees of the Department of Finance rather than by the marshal of the Municipal Court as provided for by 33 V.I.C. § 2547. In my view this statutory designation should be looked at as directory rather than mandatory since I cannot see how the plaintiffs were harmed by the Government's failure to comply therewith. This does not mean that this provision can be readily ignored in the future. At one point in the past the sale was conducted

50

through the office of the Commissioner of Finance. That the legislature saw fit to amend this provision suggests that they had some reason for so doing. Future tax sales should be conducted by the marshal of the municipal court.

■ Plaintiffs final argument, that the Certificate of Purchase is invalid because it is not properly signed by the Commissioner of Finance, is frivolous. The Commissioner's signature was affixed to the Certificate with a rubber stamp by the Assistant Commissioner of Finance who then signed his own signature. The sheer quantity of paper work and the impracticality of sending every document back and forth between the islands dictates that such a procedure be permitted.

■ Having reviewed each of the errors alleged by the plaintiffs, I am left precisely with the same feeling that Judge Maris expressed in the Williams case. He wrote:

I think enough has been said to indicate that the procedure in this instance was replete with errors and omissions, and that the provisions of the statutes were largely observed by their breach. 7 V.I. at 150.

I do not feel that the Government should continue to ignore the clear requirements of the statute. The Williams case, decided in 1969, contained many of the same errors which were committed here. The Government may not disregard statutory requirements for its own convenience and then rely on the fact that few people will sue to recover property sold at the tax sale. If the statutory requirements serve no purpose or are unrealistically demanding, the Government should petition the legislature to amend the requirements.

■ The plaintiffs are entitled to recover the property which was lost through this irregular tax sale. I am sympathetic to defendant Edney as well. Edney never

received an offer to redeem the property. At least then he would have received interest on his investment to compensate him for his effort. Edney had every reason to believe that he had legitimately acquired property albeit at a very low price, at a properly conducted tax sale. Edney, therefore, should be wholly compensated for all monies expended in the acquisition and ownership of this property. Moreover, since an offer of redemption was never made prior to the commencement of this lawsuit, I will view Edney as the "prevailing party" so that attorney's fees may be awarded to him. I see no reason why Edney should end up losing money on this transaction. The plaintiffs are not entirely without fault. If they owned property here in the Virgin Islands, they should have kept the Government advised of their mailing address at all times.

Accordingly, defendant Edney shall recover from the plaintiffs the $150.00 purchase price together with interest thereon from April 4, 1974, until the date of this judgment, $60.68 for 1973 real property taxes paid by him, and a $2.00 recording fee. Further, I will also award to defendant Edney, pursuant to 5 V.I.C. § 541, attorney's fees as part of his costs herein.

### JUDGMENT

In accordance with the Memorandum Opinion of even date herewith to which this Judgment is attached and for the reasons set forth therein, it is hereby

ORDERED, ADJUDGED and DECREED,

that the tax sale of Plot 123, Estate Little La Grange, occurring on or about March 29, 1974, was void, and that the Certificate of Purchase issued by the Commissioner of Finance to Adolphus Edney was without effect and gave to him no title in Plot 123; and it is further

ORDERED, ADJUDGED and DECREED,

that defendant Edney shall recover from the plaintiffs the following amounts: (1) $150.00 with interest thereon from April 4, 1974, until the date of this judgment, (2) $60.68, (3) $2.00, and (4) $300.00 attorney's fees.