**CENTRALPACK ENGINEERING CORPORATION, Plaintiff**

v.

**THE GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF FINANCE, JOHN O. deJONGH, JR., COMMISSIONER OF FINANCE, JAN HANLEY and SID KALMANS, Defendants**

Civil No. 1037/88

Territorial Court of the Virgin Islands

Div. of St. Croix

November 22, 1989

LEE J. ROHN, ESQ., St. Croix, V.I., *for plaintiff*

NORMAN P. JONES, ESQ., St. Croix, V.I., *for defendants Jan Hanley and Sid Kalmans*

RICHARD MARLAR, ESQ., Assistant Attorney General, St. Croix, V.I., *for Government of the V.I. Department of Finance*

ELTMAN, *Judge*

## MEMORANDUM OPINION

This case involves the public sale of the plaintiff's real property on account of unpaid taxes. The Government violated fundamental due process as well as specific statutory mandates. Neither the statute of limitations nor the doctrine of laches bars this action. Accordingly, the plaintiff's motion for summary judgment will be granted and the sale set aside.

## FACTS

In September, 1979, the plaintiff, Centralpack Engineering Corporation ("Centralpack"), a small, family-owned New Jersey company, bought 0.6824 acres of undeveloped beachfront property at 24 Turner's Hole, on the east end of St. Croix. The purchase price was $22,000.00

The Tax Assessor sent the property tax bill for 1979 to Centralpack at its offices at "31 Fairfield Pl., E. Caldwell, N.J. 07006," the address contained on the deed. The bill incorrectly named the owner as "Centrapack Eng Corp" (sic). In paying its 1979 tax bill in September, 1980, in the amount of $163.20, Centralpack interlined the original address on the bill and substituted "359 Green Pond Rd., Hibernia, N.J. 07842," but it did not correct the error in its name. The tax payment was by check drawn on the account of Morris General Corporation, with the same Hibernia, N.J., address as that written onto the tax bill.

Dorothy Horsford, an employee of the Department of Finance, processed the payment, entered the plaintiffs new address onto the Department's retained copies of the 1979 bill and sent one of the copies of the paid tax bill, containing the change of address, to the Office of the Assessor. Notwithstanding this information, the Assessor sent the 1980 and 1981 tax bills to Centralpack's old address in Hibernia, N.J. The Post Office returned the tax bills, undelivered, to the Department of Finance. The "return to sender"

266

stamp affixed to one envelope bore the notation "fwd exp.," which appears to indicate that the time for forwarding mail to the addressee had expired. Another returned envelope was marked "addressee unknown."[1] Centralpack did not pay 1980 or 1981 property taxes on 24 Turner's Hole.

For the tax years 1980 and 1981, and pursuant to 33 V.I.C. § 2495(b),[2] the Commissioner of Finance published notices that real property taxes were due and payable. For 1980, the notices were published in *The V.I. Post,* a now defunct St. Thomas paper, and *The St. Croix Mirror,* a St. Croix newspaper also now out of business. The notices were not published, as the statute requires, in "all newspapers of general circulation in the Virgin Islands," since they did not also appear in *The St. Croix Avis* or *The Virgin Islands Daily News.* In addition, the notices were not published in a timely manner, because they were not published by June 1, as the statute requires.

In April, 1982, the Department of Finance mailed a notice of attachment to the plaintiff at its old address. It too was returned to the Government, undelivered. In July, 1982, pursuant to 33 V.I.C. § 2541,[3] the Department posted a notice of attachment at the property, having failed to find a resident or caretaker of the property upon whom the notice could be served. Centralpack did not actually learn of the attachment either by mail or by posting.

The Government then proceeded to sell 24 Turner's Hole at a properly advertised public auction, on account of delinquent property taxes totalling $265.93. On June 29, 1983, the property was sold to the defendants Hanley and Kalmans for $3,100.00. The Government sent notice by certified mail to Centralpack that the

---

[1] It also appears that the Tax Assessor's bill was mailed in an envelope identifying the Department of Finance as the sender, so that the Assessor did not receive direct notice that its bill was not delivered to the plaintiff.

[2] 33 V.I.C. § 2495(b):

Notices shall be published by the Commissioner of Finance, three times in all newspapers of general circulation in the Virgin Islands, and shall be posted in frequented public places in the Virgin Islands, not later than the first day of the month in which the tax is to be collected.

[3] 33 V.I.C. § 2541(b) provides, in relevant part:

When the debtor, a member of the debtor's family or attendants cannot be found, the Commissioner shall leave the notice with two neighbors of the debtor who shall be witnesses of the service of the notice, or, if no witnesses can be found willing to receive the notice, then the notice shall be posted on or attached to the property of the debtor, whereupon the notice shall be considered as being served upon the debtor.

property had been sold at auction. The mail was again addressed to Centralpack's old W. Caldwell address. Although this time the mail was delivered, as evidenced by a signed receipt, Centralpack maintains that it cannot identify who signed for the envelope except that the recipient was not an agent of the corporation, and that, in any event, the mail was never forwarded to the plaintiff's Hibernia, N.J., address.

Thereafter, the one year period within which the plaintiff could have redeemed the property passed without activity. 33 V.I.C. § 2581. Centralpack did not know that taxes were due or that it had lost the property. The company has other holdings and its bookkeeper pays bills as they arrive. Because it did not receive any tax bills for 24 Turner's Hole after 1979, Centralpack did not realize that taxes were delinquent. However, it continued to pay off the mortgage as well as membership dues to the Grapetree Homeowners Association, and its representatives visited the property regularly. Not until Centralpack was preparing to transfer the land in November, 1988, did its local attorney discover the 1983 tax sale. The plaintiff then promptly filed this action to set aside the tax sale to Hanley and Kalmans.

The property remains undeveloped. It currently is appraised at $190,000.00, an amount which represents an appreciation of almost nine times what Centralpack paid for it in 1979 and more than sixty-one times the 1983 investment of Hanley and Kalmans.

## DISCUSSION

Centralpack presents an array of reasons why the tax sale was defective, all of which are variants of its claim that it was denied due process. The defendants respond that the Government substantially complied with the applicable statutes and that, in any event, this action is barred by the statute of limitations or, failing that, by the doctrine of laches.

A. *Notice by Mail*

In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950), the Supreme Court held that published notice of an action to settle the accounts of a common trust fund was insufficient to inform trust beneficiaries whose names and addresses were known. The Court observed:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice

268

*reasonably calculated, under all the circumstances,* to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (Emphasis supplied.)

■ In a factual situation more analogous to the instant case, the Supreme Court struck down on due process grounds an Indiana statute giving only constructive notice, by publication, to a mortgagee of property subject to a pending tax sale. Mennonite Board of Missions v. Adams, 462 U.S. 791, 800, 103 S. Ct. 2706, 2712 (1983):[4]

Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. (Emphasis in original.)

Our District Court has held that due process requires that notice of attachment must be given by mail where personal service is not effected and the notice is merely posted on the property, pursuant to 33 V.I.C. § 2541(b). *Shree Ram Naya Sabha v. Hendricks, supra.*[5]

■ As early as September, 1980, the Government of the Virgin Islands, specifically the Tax Assessor and the Department of Finance of the Government of the Virgin Islands, had actual knowledge of the change of address of Centralpack Engineering Corporation.[6] Despite that actual knowledge not only of the plaintiff's new address but also that mail sent to the old address

---

[4] Mennonite Board of Missions was decided on June 22, 1983. The tax sale herein occurred on June 29, 1983.

[5] Shree Ram Naya Sabha was decided on July 14, 1982. Posting of notice at 24 Turner's Hole occurred earlier, on July 2, 1982. While Shree Ram Naya Sabha was not made retroactive, the specific language was: "[This opinion] will not be retroactively applied to any other instances where notice was given [by posting only] *and* the tax sale held prior to the date of the judgment herein." (Emphasis supplied.) Id. at 222. While notice by posting was made before the decision, the tax sale was conducted thereafter, so that Shree Ram Naya Sabha is binding authority.

[6] Centralpack contends that the continued incorrect reference to its name as "Centrapack Eng Corp" was prejudicial and in and of itself warrants setting aside the tax sale. However, Centralpack ratified the abbreviated and slightly wrong spelling by making no changes in it on its 1979 tax bill, the very one on which it advised of its new address. Moreover, "Centrapack" is so close to "Centralpack" as to fit within the doctrine of idem sonans. Absolute accuracy in spelling is not required if the names are substantially the same and "the attentive ear finds difficulty in distinguishing them when pronounced." Polk v.

269

was (with the exception of the final notice of sale) not being delivered to Centralpack, the Government did nothing to correct its continuing mistake. Due process manifestly was not satisfied merely by the mailing of notices to Centralpack when the Government knew or should have known (a) that they were being sent to the wrong address and (b) that Centralpack was not receiving the mail.

The Government contends that Ms. Horsford was not authorized to enter the address change in the records of the Finance Department. The argument is that the address as reflected on the deed may be changed only by letter from the owner of record or by a mortgagee or lienor. According to the Government, it is impermissible and improper for the taxpayer to simply cross out the printed address on the tax bill and substitute another address.

If that is indeed the rule, nowhere is it suggested that Centralpack knew or should have known the rule, which is expressed in no cited statute, regulation, opinion or anywhere else. Moreover, if indeed Ms. Horsford did not follow some established procedure, the fact remains that the Government's records, both in the Finance Department and the Tax Assessor's Office, contained the plaintiff's new address. Each time that mail was returned undelivered, apparently no one consulted the files to attempt to determine the problem. Alternatively, perhaps the answer was discovered but ignored. In either event, just as the change of address was simply disregarded on account of noncompliance with a claimed but unpromulgated administrative procedure, so also was the clear evidence that the taxpayer was not receiving the crucial notices. Rather, the Government chose to exalt form over substance.

The Government argues, with some justification, that the possibility of fraud arises by an "informal" change of address, such as occurred here, particularly where the tax payment is made by a third, unknown entity. The answer to that concern is quite simple: if the attempted address change is not deemed sufficient, the property owner should be so notified and directed to comply with the preferred procedure. Otherwise, the owner has good reason to assume that the Government has acknowledged the change of address.

---

State, 704 S.W.2d 929 (Tex. 1986). The mistakes in names in Williams v. Abel, 7 V.I. 146 (D.V.I. 1969) and Marx v. Hanthorn, 148 U.S. 172 (1892), relied on by the plaintiff, were affirmatively misleading, and their use had not been ratified as occurred here.

■ The Government adds that, in the absence of what it terms "clear and sufficient notice" of an address change submitted by an authorized party, 33 V.I.C. § 2410[7] requires that the Government use the address on the deed in sending tax notices to the property owner. This position is unsupportable. First, Centralpack's notice of its address change was clear and sufficient from any reasonable perspective. Second, all § 2410 requires is that real property be assessed to the owner or possessor. The assertion that the statute requires the Government to adhere to the address on the deed is mere fancy.

In federal income tax cases, courts have held that the Commissioner of Internal Revenue is required to exercise reasonable diligence in directing mail to the taxpayer's correct address and to give effect to a "clear and concise" notification of a new address on a filed tax return. Wallin v. Commissioner, 744 F.2d 674, 676 (9th Cir. 1984); McPartlin v. Commissioner, 653 F.2d 1185 (7th Cir. 1981). "If a notice of delinquency were mailed to an incorrect address and not received by the taxpayer there would naturally be strong reason for determining that no notice was mailed." Delman v. Commissioner, 384 F.2d 929, 932 (3d Cir. 1967), cert. denied, 390 U.S. 952, 88 S. Ct. 1044 (1968).

■ Even if, following its claimed criteria for an effective change of address, the Government chose to reject or doubt the information it had received, at the very least it was on notice of a problem or discrepancy. Rather than merely relying on records which it had ample reason to know were incorrect and repeatedly taking action which demonstrably was ineffective, the Government at a minimum had a duty to inquire.

> Inquiry notice exists where a person has knowledge of such facts as would lead a fair and prudent person using ordinary care to make further inquiries. Where the person does not take those added steps, he or she is chargeable with knowledge that would have been acquired through diligent inquiry.

---

[7] 33 V.I.C. § 2410:

> All property shall be assessed to the person who is either the owner or in possession thereof on the 15th day of January, and the person appearing of record on the 15th day of January shall be held to be the true owner thereof. No deduction shall be allowed on account of any debt incurred by mortgage, conditional sale, contract, or other obligation upon said real property and the taxes so levied shall be a lien upon the property.

Shacket v. Rodger Smith Aircraft Sales, Inc., 651 F. Supp. ⟨ 5, 690 (N.D. Ill. 1985). See also D.C. Transit System, Inc. v. Un ⟨ ⟩d States, 531 F. Supp. 808 (D.D.C. 1982); GAF Corp. v. Arnchem Products, Inc., 399 F. Supp. 647 (E.D. Pa. 1975), reversed on other grounds, 570 F.2d 457 (3d Cir. 1977).

The defendants also maintain that, whatever the technical deficiencies in the published notices and whatever the mistakes in notifying the plaintiff by mail, the law nevertheless places the affirmative duty on the property owner to pay its taxes, with or without notice. Indeed, 33 V.I.C. § 2495(a) provides:

> No demand for taxes shall be necessary. It shall be the duty of every person subject to taxation under this subtitle to call at the office of the Commissioner of Finance and pay his taxes in full.

■ Notwithstanding the clarity of § 2495(a), the 1936 statute does not peacefully coexist with the explicit and mandatory procedures for the collection of real estate taxes and the attachment and sale of real property for unpaid taxes, Rivera v. Government, supra at 46, or with contemporary due process jurisprudence. Mullane v. Central Hanover Bank & Trust Co., supra. See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S. Ct. 2140 (1978); Greene v. Lindsey, 456 U.S. 444, 102 S. Ct. 1874 (1982). The failure to pay real estate taxes results in proceedings which adversely affect property interests, thus triggering due process protection in the form of the right to adequate and meaningful notice. Mennonite Board of Missions v. Adams, supra. Therefore, § 2495(a) cannot vitiate the constitutionally rooted rights of the property owner or the corresponding obligations of the sovereign. Put another way, if it ever had any practical vitality, § 2495(a) has become an unenforceable anachronism.

B. *Notice By Publication*

■■ "It is well settled that statutes authorizing and regulating tax sales must be strictly construed in favor of the owner of land." Williams v. Abel, 7 V.I. 146, 150 (D.V.I. 1976); Rivera v. Government of the Virgin Islands, 13 V.I. 42 (D.V.I. 1976); Shree Ram Naya Sabha, Inc. v. Hendricks, 19 V.I. 216 (D.V.I. 1982). The burden of proving compliance with statutory requirements is upon the purchasers of the property sold at auction. Benoit v. Daniel, 21 V.I. 378, 381 (D.V.I. 1985). The burden rests upon the Government as well, which, like the purchasers, seeks to preserve the integrity

of the sale. Since strict compliance is the rule, by definition the Court need not determine whether or not a procedural irregularity was prejudicial in its effect.

 Sec. 2495(b) requires that the Government publish notice of taxes due in "all newspapers of general circulation in the Virgin Islands"; the Government did not do so for 1980. Moreover, the notice was published on June 8, 15 and 22, 1981. Since § 2495(b) requires such publication "not later than the first day of the month in which the tax is collected, which, pursuant to § 2494, was June 1, 1981,[8] the notice was published too late to comply with the statute. For the tax year 1981, notices were published in both the *The Avis* and *The Daily News*,[9] but on June 23, 30, and July 7, again too late to satisfy the time requirement of § 2495(b).

C. *Statute of Limitations/Laches*

 Although filed well past the expiration of the two-year statute of limitations, 5 V.I.C. § 31(5)(A), this action is not time-barred. The Virgin Islands follows the majority rule that "the statute of limitations does not prevent a tax debtor from challenging an invalid tax sale." Benoit v. Daniel, 21 V.I. 378, 380 (D.V.I. 1985), affirmed sub nom., Benoit v. Panthaky, 780 F.2d 336 (3d Cir. 1985). Similarly, with respect to the defense of laches, the District Court in Benoit noted:

> [D]eprivation of a landowner's right to notice of delinquent taxes and a pending tax sale, contained in the Fourteenth Amendment due process clause, should be given a higher priority than a tax sale purchaser's right to be free from "stale" claims raised after the statute of limitations has run.

Id. at 383.

 In its affirmance of Benoit, the Third Circuit did not read the District Court's opinion as setting forth an absolute rule that laches may never bar a constitutionally infirm tax sale. Instead, it reiterated that a defense of laches, rooted as it is in equity, is addressed to the discretion of the trial court. Id. at 339. The defense of laches is two-pronged: " '(1) lack of diligence by the

---

[8] Section 2494 has since been amended to provide that taxes are due on September 30.

[9] Since neither *The Post*, nor *The Mirror* was distributed throughout the entire territory, neither was a newspaper of general circulation in the Virgin Islands for § 2495 purposes.

party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 80 (3d Cir. 1984), quoting Costello v. United States, 365 U.S. 265, 282, 81 S. Ct. 534, 543 (1961); Holmes v. Government of the Virgin Islands, 370 F. Supp. 715 (D.V.I. 1974). After the statute of limitations has run, the plaintiff bears the burden of disproving laches. Benoit v. Daniel, supra at 383.

If § 2495(a), which obliges the property owner to pay taxes without demand, retains any vitality, it does so on the question of Centralpack's purported lack of diligence. Centralpack's explanation that the corporation paid taxes on its various properties when it received tax bills is plausible. Nevertheless, Centralpack had at least constructive knowledge that it was not maintaining its tax status on 24 Turner's Hole for some eight years, i.e., between 1980, when it last paid a tax bill, and 1988, when it discovered that the property had been sold in 1985. On balance, however, the Government's failure to properly direct tax bills and notices of attachment and sale to Centralpack's correct address was the primary cause of the plaintiff's inaction, so that Centralpack's delay cannot fairly be said to be inexcusable.

 With respect to the element of prejudice, there is none to the Government, which has received from the purchasers full payment for delinquent taxes. Hanley and Kalmans, the innocent tax sale purchasers, while presumably disappointed, are not injured by this decision. They do not claim to have transferred or developed 24 Turner's Hole or sustained any expenses other than the $3,100.00 purchase price and associated costs. Unfortunately, reversion of the property to Centralpack takes from them the prospect of a windfall return on their small investment. However, enhancement of the value of the property involved does not of itself constitute prejudice for laches purposes. West Los Angeles Institute of Cancer Research v. Mayer, 366 F.2d 220, cert. denied, 87 S. Ct. 718, 385 U.S. 1010 (9th Cir. 1966); Fitzgerald v. O'Connell, 386 A.2d 1384 (R.I. 1978).

## CONCLUSION

 For the reasons discussed, summary judgment will be granted to the plaintiff, setting aside the tax sale of 24 Turner's Hole, conditioned upon the plaintiff reimbursing the defendants Hanley and Kalmans $265.93, plus statutory interest from June 29, 1983. A cross-claim by Hanley and Kalmans against the Government remains pending. The Court may not award summary

judgment sua sponte. Davis Elliott Int'l. v. Pan American Container Corp., 705 F.2d 705 (3rd Cir. 1983); Brow v. Farrelly, Dist. Ct. App. Div., 1987/170 (9/26/88). Trial of the cross-claim is therefore scheduled for December 11, 1989, at 10:00 a.m.

## ORDER

In accordance with the memorandum opinion of even date, it is hereby

ORDERED that the motion of the plaintiff for summary judgment on its complaint is hereby granted; and it is further

ORDERED that the June 29, 1983 sale of 24 Turner's Hole, St. Croix, U.S. Virgin Islands, by the Government of the Virgin Islands to Jan Hanley and Sid Kalmans is vacated and set aside and Centralpack Engineering Corporation declared to be the legal owner of said real property, conditioned upon payment by the plaintiff to the defendants Hanley and Kalmans of $265.93, plus statutory interest from June 29, 1983; and it is further

ORDERED that the motion for summary judgment by the defendants Hanley and Kalmans is denied; and it is further

ORDERED that trial of the cross-claim by defendants Hanley and Kalmans against the defendant Government of the Virgin Islands shall be held on December 11, 1989, at 10:00 a.m.