**JALEH GROBIEN, Plaintiff-Appellee**

**v.**

**GEORGE LOMBARDI, VICTORIA WINGO & KYLE WINGO, and COMMISSIONER OF FINANCE OF THE GOVERNMENT OF THE VIRGIN ISLANDS, Defendants-Appellants**

Terr. Ct. Civil No. 1989/131

Dist. Ct. Civil No. 1990/139

District Court of the Virgin Islands

Appellate Division, St. Croix

May 30, 1991

DOUGLAS A. BRADY, ESQ., (BRADY, HART & JACOBS), St. Croix, V.I., *attorney for plaintiff-appellee*

ANTOINE L. JOSEPH, ESQ., St. Croix, V.I., *attorney for defendants-appellants*

BROTMAN, *Acting Chief Judge, Sitting by Designation*

On Appeal from the
Territorial Court of the Virgin Islands

BEFORE: STANLEY S. BROTMAN, *Acting Chief Judge*, District Court of the Virgin Islands, *Judge* of the United States District Court for the District of New Jersey, Sitting by Designation; and FRANK A. KAUFMAN, *Judge* of the United States District Court for the District of Maryland, Sitting by Designation; and ISHMAEL A. MEYERS, *Judge* of the Territorial Court of the United States, Virgin Islands, Sitting by Designation.

## OPINION OF THE COURT

Appellants, Victoria Wingo, Kyle Wingo, and George Lombardi, appeal from the decision of the Territorial Court granting summary judgment to appellee, Jaleh Grobien, voiding the tax sale of Plot No. 83 Estate South Slob to appellant Lombardi, and restoring title to that property to Grobien.

## I. FACTS AND PROCEDURE

Appellee Jaleh Grobien was a resident of Tehran, Iran when she purchased plot 83 Estate South Slob on St. Croix's East End by warranty deed dated November 10, 1972 for $23,000.00. Through tax year 1977, tax bills were forwarded to Grobien at the address indicated on the warranty deed in Tehran, Iran. Grobien paid all taxes on the property owed through 1977. She experienced difficulty in paying those bills as her attempted wire transfers proved ineffective. Ultimately, Grobien resorted to sending cash through the mails to pay the taxes on the property through 1977. By letter dated March 25, 1977, Grobien's attorney notified the Tax Assessor's Office that her address had changed from that contained on the warranty deed to a new address in Tehran. Less than three weeks later, on April 13,

308

1977, Walter J. M. Pedersen, Assistant Commissioner of the Department of Finance, wrote to plaintiff at the new address. For some unknown reason, beginning with tax year 1978, the Virgin Islands Government forwarded the tax bills for the property to Grobien at "Deutsche Bank, A.G. West Germany".[1] Grobien had not informed the Virgin Islands Government that this was her address, nor did she receive any of the tax bills sent to that address.[2]

On June 29, 1983, the Virgin Islands Government sold the property in a tax sale to appellant Lombardi for $2,600.00.[3] In a letter dated August 31, 1983, appellant Lombardi wrote to Grobien at the Tehran address listed on the warranty deed, stating that he had a client interested in her property. He requested that she inform him if he could communicate with her in detail. Grobien responded to the letter suggesting that he contact her with further information. She did not receive any further information from Lombardi, nor did he inform her that he had purchased the property at the June 29, 1983 tax sale.

In late 1987, Grobien decided to sell her property on St. Croix, and contacted a local realtor to determine the value of the property. She entered into an agreement with a realtor on St. Croix to list the property for sale for $60,000.00.

In December of 1987, appellee first learned that her property had been sold in June of 1983. Through counsel she contacted the tax sale purchaser, Lombardi, to negotiate an amicable resolution of the dispute. After negotiations failed, she filed this lawsuit in the Territorial Court and a Notice of Lis Pendens in early February, 1989. Appellee's Notice of Liz Pendens was received for recording on February 10, 1989. On February 9, 1989, Lombardi transferred the property to the Wingos via quitclaim deed for $19,000.00, which was received for recording on February 13, 1989.

After hearing the argument of counsel and requesting supplemental briefing on the issue of laches, the Territorial Court entered summary judgment in favor of appellee on March 27, 1990, voiding the

---

[1] Grobien equates the likelihood of her receiving such notice with the likelihood that she would have received a letter addressed to her at "Chase Manhattan Bank, U.S.A."

[2] Appellee notes that communications between Tehran, Iran and other places in the world were extremely tenuous during this time period due to the American hostage crisis and the political situation in Iran which led to that crisis.

[3] The amount of unpaid taxes totaled $439.20, plus penalties and costs.

tax sale to appellant Lombardi with a condition precedent that appellee reimburse Lombardi $556.89 for the amount of taxes, penalties and costs due on the property at the time of the tax sale, plus statutory interest from the date of the tax sale on June 29, 1983. The Territorial Court further ordered Grobien to reimburse Lombardi and the Wingos (to whom Lombardi transferred the property) for any and all taxes which had been paid on the property since the tax sale plus statutory interest from the date of payment. Lombardi and the Wingos then timely filed a notice of appeal.

Appellants claim that the Territorial Court erred in granting summary judgment to Grobien where she had not redeemed the property within one year from the date of the tax sale as required by Title 33, V.I.C. § 2552. Appellants point to the fact that appellee did not bring her suit in Territorial Court to set aside the tax sale until 1989, six years after the tax sale, and eleven years after the tax year in which appellee's property taxes first became delinquent. Appellants contend that appellee had a burden to demonstrate that she was not negligent in failing to pay the taxes which she failed to meet, and that in any case, the Wingos were innocent purchasers in good faith. They frame the issue on appeal as "Did the trial judge err in granting summary judgment to the former landowner despite the fact that no redemption had been made?"

Appellee argues that the Territorial Court properly granted summary judgment in her favor as the statutory procedures necessary to validly conduct a tax sale of her property were not followed and that it was within the sound discretion of the Territorial Court to find that her suit was not barred by laches. She frames the issue on appeal as "Did the court below err as a matter of law in granting summary judgment by abusing its sound discretion to refuse to hold that plaintiff/Appellee was barred by the doctrine of laches from obtaining the relief she sought?"

Essentially, there are two issues upon appeal. The first issue the court must resolve is whether the Territorial Court erred as a matter of law in granting summary judgment to appellee, finding that the government failed to give adequate notice of the tax sale to the owner of the property. If the Territorial Court correctly determined that the tax sale was void ab initio, the court must determine whether the Territorial Court abused its discretion in determining that laches did not bar appellee's suit.

## II. DISCUSSION

### A. *The Validity of the Tax Sale*

Appellants cite two cases in support of their argument that the statute of limitations bars an action to set aside a tax sale even when inadequate notice is provided to the property owner—Shaffer v. Mareve Oil Corp., 204 S.E.2d 404 (W.Va. 1974) and Tannhauser v. Adams, 31 Cal.2d 169, 187 P.2d 716 (1947). Appellants have failed to address the wealth of law from the Virgin Islands holding that inadequate notice voids a tax sale.

■ It is firmly established law in the Virgin Islands that a tax sale is void unless the government carefully adheres to the notice procedures for a tax sale required by Title 33 of the Virgin Islands Code and the due process clause of the Fourteenth Amendment to the United States Constitution. Shree Ram Naya Sabha, Inc. v. Hendricks, 19 V.I. 216 (D.V.I. 1982); Centralpack Engineering Corp. v. Gov't of the Virgin Islands, 24 V.I. 264 (Terr. Ct., Div. of St. Croix 1989); Benoit v. Panthaky, 20 V.I. 28, 30 (Terr. Ct. Div. St. Croix 1983), aff'd 21 V.I. 378 (D.V.I. 1985), aff'd 780 F.2d 336 (3d Cir. 1985). The statute of limitations for actions to set aside a tax sale, Title 5, § 31(5)(A) of the Virgin Island Code, will not run for tax sales conducted without constitutionally adequate notice. Benoit, 20 V.I. at 31; aff'd 21 V.I. at 381–82, aff'd 780 F.2d at 338–39. "The Virgin Islands follows the majority rule that 'the statute of limitations does not prevent a tax debtor from challenging an invalid tax sale.'" Centralpack Engineering, 24 V.I. at 273, quoting Benoit, 21 V.I. at 380; see Benoit, 21 V.I. at 384; Benoit, 780 F.2d at 338–39.

In this case, appellee's counsel expressly informed the Tax Assessor's Office of her new address in Tehran, Iran by letter dated March 25, 1977. Less than three weeks later, the Assistant Commissioner of the Department of Finance wrote to plaintiff at the new address in Tehran, Iran. For some unexplained reason, the Virgin Islands Government forwarded the tax bills for the property to Grobien at "Deutsche Bank, A.G. West Germany" beginning with the tax year 1978. Grobien had not informed the Virgin Islands Government that this was her address, nor did she receive any of the tax bills sent to that address. The government's statutory and constitutional obligations required it to send appellee notice by mail to her correct address when it in fact knew that address. Centralpack Engineering, 24 V.I. at 269–70. As there was no evidence that the government sent

appellee notice of the impending tax sale to her new address in Tehran, or to anyplace other than "Deutsche Bank, A.G. West Germany", the notice provided by the government was statutorily and constitutionally inadequate.

■ Appellants also contend that appellee had an affirmative duty to come to the Virgin Islands and pay her taxes pursuant to Title 33, § 2495(a) of the Virgin Islands Code, notwithstanding any inadequacies of the notice she received concerning the taxes. Appellee's due process rights, however, supplant any obligation under § 2495(a). One court held that "§ 2495(a) has become an unenforceable anachronism." Centralpack Engineering Corp., 24 V.I. at 273. Hence, this court will affirm the Territorial Court's determination that the tax sale was void ab initio as a matter of law.

## B. *Laches*

■■ As the tax sale was void due to the lack of adequate notice to appellee, the court must move to the second issue implicated in this appeal, namely whether the Territorial Court abused its discretion by determining that laches did not bar plaintiff's action. The equitable doctrine of laches is left to the sound discretion of the trial court. Absent an abuse of discretion, the determination of the court below will not be upset. University of Pittsburgh v. Champion Products Inc., 686 F.2d 1040, 1054 (3d Cir. 1982). The defense of laches is two-pronged—inexcusable delay in instituting suit, and prejudice resulting from the delay. Id.

■ Whether or not appellee's delay in filing suit was excusable, there appears to have been no prejudice to appellants from the delay. Lombardi was made whole by the Territorial Court by the reimbursement of that portion of the tax sale price attributable to delinquent taxes, costs and penalties plus statutory interest, reimbursement for any additional taxes he may have incurred plus statutory interest, and he may make a claim against the government for the balance of the tax sale price. The Wingos were made whole by the Territorial Court as appellee will reimburse them for any taxes they may have paid on the property plus statutory interest, and they have a cause of action against Lombardi for the recovery of their purchase price. The Territorial Court carefully considered the issue of laches, and requested additional briefing on the issue.

Given the facts in this case, including the fact that Lombardi transferred the property to the Wingos virtually simultaneously with

the breakdown of negotiations between Lombardi and Grobien and Grobien's commencement of this suit, and the fact that the property was transferred by Lombardi via quitclaim deed for $19,000.00 in February 1989, $4,000.00 less than Grobien paid for the property in 1971, and over $40,000.00 less than a real estate agent informed Grobien it was worth in late 1987, the court will not disturb the judgment of the Territorial Court that laches did not bar appellee's suit.

■ Appellants make one final argument. They contend that the property passed into the hands of an innocent purchaser in good faith, and that equity requires that the title remain with the Wingos. The inference from the timing of the sale, the purchase price, and the fact that the property was conveyed via quitclaim deed make the court question whether the Wingos were innocent purchasers in good faith. If the Wingos were unaware of the dispute between Grobien and Lombardi, the purchase price and quitclaim deed should have put them on notice to inquire further.

## III. CONCLUSION

For the foregoing reasons, the court will affirm the decision of the Territorial Court.

An appropriate order will be entered.

## JUDGMENT OF THE COURT

This matter is before the court on appeal from the Territorial Court of the Virgin Islands;

The court having considered the submissions of the parties;

Appellants having waived oral argument; and

For the reasons set forth in the court's opinion of this date;

IT IS on this 30th day of May, 1991, hereby

ORDERED AND ADJUDGED that the judgment of the Territorial Court is AFFIRMED.

No costs.